**PERSIN, Plaintiff-Appellee, v. YOUNGSTOWN (City), Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3252.    Decided April 14, 1949.

Peter B. Betras, A. T. Kryzan, Youngstown, for plaintiff-appellee.

H. Herschel Hunt, Law Director, I. Freeman and P. Richard Schumann, Asst. Law Directors, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, PJ.

Defendant, the City of Youngstown, Ohio, a municipal corporation operating under a Home Rule Charter of its own adoption, appeals on questions of law from a judgment of the court of common pleas "entered on September 23, 1948, overruling the defendant's motion for judgment notwithstanding the disagreement of the jury."

In a word plaintiff alleged in his petition that as the result of the construction by defendant city of a 606 acre airport in 1939 on the westerly side of Ohio State Route 90 in Trumbull County, Ohio, his land situated on the easterly side thereof, which he had owned for more than 30 years, was damaged by defendant diverting water from its natural courses; and by accelerating and increasing the flow of surface water from a greater area than previously such water drained toward the east beyond the capacity of the water courses in their natural drainage to dispose of it, causing an overflow of water upon his land and a backing up and flooding thereof thereon where originally there was no overflow; that defendant caused water to flow from the westerly side of route 90 across that highway upon his land, and has failed to control all such flow and overflow of water, and has drained greater "territory into said water courses, ditches and onto the property of plaintiff that never before drained water into said water courses, ditches or flowed upon the property of plaintiff" (sic); and finally that defendant maintains a nuisance.

In its answer defendant admitted the construction, location and maintenance of its airport as alleged; and by second defense demurred to plaintiff's petition on the ground that "the allegations therein do not state a cause of action against it"; and in its third defense averred "that if the facts so alleged do constitute a cause of action against this defendant, which defendant denies, then said cause of action is not brought within the time stipulated by law and is barred by the Statute of Limitations."

By assignments of error defendant claims that the trial "court erred in overruling defendant's several motions for directed verdict" made at the close of plaintiff's case and at the conclusion of all the evidence; "in not holding plaintiff's claim damnum absque injuria because of defendant's natural easement of drainage as upper proprietor and its inherent and statutory right to the 'reasonable use' of its land for airport purposes"; in overruling defendant's motion

for judgment non obstante, as there was no evidence showing any change of conditions with respect to flooding by the construction of the airport, or that the flooding was caused by any unlawful act on the part of the defendant by reason of which "the judgment of the court of common pleas is contrary to law; and contends:—

"(1) That under the evidence adduced no change of conditions with respect to flooding, by the construction of the airport, had been shown; (2) that as upper proprietor the City had a natural easement of drainage with respect to surface water; (3) that the improvement of its land for airport purposes was a 'reasonable use' of its property and the exercise of a statutory power conferred by §3939 (22) GC, which specifically enables a municipality to acquire 'land and air rights necessary for landing fields, either within or without the limits of the municipality, for aircraft and transportation terminal uses associated therewith and incident thereto and to improve and equip the same with structures necessary or appropriate to such purposes'; that the inadequacy and clogged conditions of the lateral ditches along State Highway No. 90, constructed and maintained by the State Highway Department, were no responsibility of the City; (5) no case was established by the evidence to warrant submission of it to the jury."

As the result of the construction of such airport, the highest point of which is "up here at the north and 1196 feet," fences, trees and their stumps, orchards, wooded areas, underbrush, sod, vegetation and buildings were removed from 606 acres of farm and pasture land fronting 6500 feet on the west side of Route 90, all of which was graded evenly from the west to the east toward Ohio State Route 90; natural drains were filled, and as much as 50 acres of such lands were hard surfaced, partly sewered and catch basined, and four run ways, as much as 150 feet wide and 3850 feet long, parking lots and various buildings were constructed thereon, and the rest thereof was allowed to remain "in weeds and different grasses."

Plaintiff testified "my ground is low, everybody, see, low, and when we get a rain we get a little water, maybe a foot deep in the low places, maybe a foot and a half, now we got 3 or 4 feet deep, when that terrible water comes, in torrents" at various places, for at least a half a mile, directly in an eastern direction over the highway toward the Persin farm

for at least a thousand feet; "even cattle don't want to walk in the deep water"; and "you couldn't farm since water came in"; it was just "like a big lake and when you see it come down that driveway sometimes it wouldn't take long to get 5 or 6 inches, and sometimes 7 or 8 inches, deep in the cellar."

The evidence discloses that plaintiff's land is situated approximately 1800 feet south of the entrance to defendant's airport and that his land, which is low and on which there was an ever flowing spring, was flooded to some extent prior to the construction thereof, three times subsequent thereto in 1946 during cloud bursts and flash floods; that there was "one place," which "was almost at the extreme south section of the airport," where "water" used to come up on the road during the heavy rains in the spring when there was ice in the ditches; that the ditch on the westerly side of Route 90 was "pretty well filled up, well I saw an ill kept ditch" which "showed lack of having been timed to a grade; that there was dirt sloughed off into it in some places, and indicated it hadn't recently been laid to an even grade"; that it "would interfere with the free drainage of water down that ditch"; that the ditch on the easterly side thereof "seemed deeper" before the construction of the airport, "and could take care of the water before, but not now"; that prior to the construction of the airport water, which drained toward the highway (easterly), came from cultivated fields, meadows, pastures, orchards, and shaded lands, twenty-five acres less in extent than at the time of which plaintiff complains, and that the natural slope of the land to the east was not changed substantially by the construction of the airport; that since such construction such drained land is sodded, which would reduce and retard the "run off" of surface waters therefrom after heavy rains; that a ditch on the Turowski farm, extending east for three-quarters of a mile from the airport entrance to a creek, is a "natural water course"; that "since the airport was constructed" one witness never saw "at any time water flowing from the airport lands into the west ditch of the highway, over the highway into the east ditch, and onto the Persin farm property 'because I never happened to go by when there was a storm, I was always at home, but it washed our driveway out three weeks ago'"; that the same witness never saw "water go over onto the Jackson property"; that the east and west ditches were connected by a culvert at the entrance to the airport; that drainage east of the airport entrance was a connected system as the result of which water, by the natural flow of gravity, would drain into the Turowski ditch from which it was conveyed east to a creek, its natural outlet three-quarters of a mile distant.

Defendant introduced evidence which defines the physical condition in and about the entrance to the airport and the Turowski farm, situated nearly opposite such entrance, too lengthy to state here, which it claims "proves the physical impossibility of the existence of the situation plaintiff complains of," and showing water from portions of the highway draining toward the west.

Defendant's engineer testified that there is a fall of 5 feet in the Turowski ditch toward the east in a distance of 500 feet; that in front of the Jackson farm the highway ditch was 6½ feet higher than the low point of the Turowski ditch 500 feet from the road; that water would have to be 6½ feet deep there before it could flow (and there is no evidence of water to that depth there) down the east ditch, and that if it were that deep there it would totally submerge lands situated on the east side of Route 90 to the southerly line of the airport excluding only the Jackson farm.

There is no dispute but that substantially the natural slope of land eastwardly remained unchanged after the construction of the airport.

It is on such evidence that plaintiff bottomed his case in the court of common pleas that accelerated water from the airport and its driveways and hard surfaced portions was conveyed south one-half mile to his farm by means of the east and west ditches of Route 90; and that defendant contends that "reasonable minds can reach only the following conclusions from these facts and there are inescapable:—

"(1) Construction of the Airport was a reasonable use of the land, and the means employed, were in accordance with best engineering practices.

"(2) Less surface water to the extent of the 25 acre area drained east towards Route 90 after construction of the Airport.

"(3) The smaller amount of surface water now draining east has been retarded in its flow by the grass sod covering, as opposed to the cultivated fields existing prior to the construction.

"(4) The lands of plaintiff were flooded in a similar manner prior to the construction of the Airport.

"(5) The greater degree of flooding, which may have occurred since the Airport has been constructed, is due to the clogged, filled in and generally poor condition of the state highway ditches.

"(6) The only collection or channelling of surface water is at the airport driveway where the same is conveyed by

natural gravity on to the natural water course on the Turowski farm.

"(7) This water so channelled could not, under the physical facts and the record, ever reach the Persin farm by means of the east and west highway ditches.

"(8) There is no evidence in this record which in any way supports a direct causative connection between the construction of the airport and the flooding of plaintiff's land. Rather, the greater degree of flooding complained of by plaintiff is directly due to the poor condition of the state highway ditches, and/or is equally consistent with one of the several other causes, not giving rise to liability against the City of Youngstown."

Plaintiff filed his action in the court of common pleas on February 19, 1947, and §§11599 and 11599-1 GC, enacted in June of the same year and effective September 27th, require that a motion for judgment non obstante veredicto be filed prior to the filing of entry of judgment; and since no entry journalizing the judgment of the court was filed prior to the filing of defendant's motion for judgment non obstante veredicto such motion was properly before the court. **McAtee v. Western & Southern Life Insurance Co., 82 Oh Ap 131.**

We believe that the jury's disagreement would not furnish ground for the trial judge not considering defendant's motion for judgment notwithstanding the verdict rendered against it on questions of law.

In the case of **Myers v. Elyria Memorial Hospital Co., 30 Abs 674,** in which the supreme court overruled motion to certify, the jury disagreed and was discharged by the trial judge. Upon appeal to the court of appeals of the ninth district that court said:—

"Irrespective of the disagreement of the jury, §11601 GC, empowers the trial court to pass upon a question of law and render judgment in favor of the party entitled thereto, when under the evidence received only a question of law is presented."

Counsel for defendant contend:—

"The rule has been followed on motions for directed verdict where the jury has failed to agree. **Colwell v. Dwyer, 33 Abs 455; Swaney v. Pennsylvania R. R., 23 Abs 212.** It is also an established rule of law in Ohio, followed by our court of

appeals, that the overruling of a motion for judgment notwithstanding the verdict is a final judgment from which an appeal may be prosecuted. **McClanahan v. Koviak, 62 Oh Ap 307; Cousins v. Huss, 71 Oh Ap 107; Massachusetts Insurance Co. v. Hauk, 72 Oh Ap 131, (1943) Mah. App. 48; Meyers v. Elyria Hospital, 30 Abs 674; Stowe Fuller Co. v. Dominick, 20 C. C. N. S. 556, affirmed in 75 Oh St 593; Raykovich v. Youngstown (1947) Mah. App. 72.**

"The motion non obstante as now existent under §11601 GC, is in effect nothing more than an iteration of the motion for judgment or an instructed verdict, filed at the conclusion of the case. **Harig Co. v. Cincinnati, 61 Oh Ap 314 at 319.** In passing upon such motion the court may now consider the entire record. **Arthurs v. Citizens Coal Co., 37 Abs 438.**

"Obviously, therefore, the purpose of §11601 GC is to enable the trial court to render such judgment 'upon the statements in the pleadings or upon the evidence received upon the trial' as 'one party is entitled by law,' independently of any verdict returned by the jury. Logically, too, if the court is given the power to render judgment notwithstanding or adverse to the verdict, it certainly may render the proper judgment where no verdict at all could be reached by the jury."

Obviously we conclude the trial judge had jurisdiction to rule upon defendant's motion for judgment in its favor notwithstanding the disagreement of the jury.

Defendant waived its right to rely upon its motion for judgment entered in its favor made at the close of plaintiff's case when it accepted the ruling of the trial judge and proceeded with its defense and introduced evidence on its own behalf.

"When a motion of a defendant for a directed verdict is made at the conclusion of plaintiff's evidence and overruled, the defendant has an election either to stand on his exception to the ruling or to proceed with his defense; and if he accepts the ruling, however erroneous it may be, and proceeds with his defense, introducing evidence on his own behalf, he thereby waives his right to rely on the denial of his original motion." **Halkias, Appellee, v. Wilkoff Co., Appellant, 141 Oh St 139.**

Under its assignment of error three, that "the court erred in overruling defendant's several motions for a directed verdict," defendant's counsel argue that "from the record,

the only conceivable theory upon which plaintiff can attach responsibility against the City is that by acceleration of water in times of heavy rains down the airport driveway, the water was caused to rise up and go to the south through the east and west ditches over the high point in the Jackson farm, and thence one-half mile to plaintiff's farm. Under the evidence, reasonable minds could not differ on the fact that this is a physical impossibility." Defendant's counsel supports its argument by quoting the second syllabus of **Willoughby v. Malone, 122 Oh St 315,** where it is said:—

"In an action against a village for damages due to the backing up of sewage upon private property, it is reversible error to charge the jury that 'if you find that plaintiff's house was properly connected with the sanitary sewer, evidence of failure of the sewer to drain plaintiff's property is prima facie evidence of defective construction or negligent maintenance.'"

Counsel for defendant further argue that to avoid the rule announced in the case of Village of Willoughby v. Malone, supra, the plaintiff would have to sustain the burden of proving:—

"(1) That the state highway ditches were well-kept;
"(2) That the culvert underneath his own driveway was free from obstructions;
"(3) That the east and west ditches and their culverts, as they extend north of his farm, were equally free from obstructions."

Finally on this assignment of error counsel for defendant claim there is no proof contained in the record on any of the quoted propositions, and that after giving the evidence the most favorable construction in favor of plaintiff of which it is susceptible that the court should have directed a verdict in favor of defendant.

We have read the voluminous record of the testimony taken in the court of common pleas, and studied the evidence and exhibits contained therein, and upon such evidence we can not reach the conclusions at which defendant asks us to arrive that "reasonable minds can reach only" all of the conclusions outlined in their quoted eight points; and conclude that the trial judge did not err, as urged in this assigned ground of error, in overruling defendant city's motion for a verdict directed in its favor made at the conclusion of all the evidence.

Defendant argues that assuming, but not admitting, that plaintiff's land was flooded occasionally subsequent to the construction of its airport, that his claimed damage resulting therefrom was "damnum absque injuria because of defendant's natural easement of drainage as upper proprietor and its inherent and statutory right to the reasonable use" of its land for airport purposes, and cites authorities as follows:—

" 'While the rightful use of one's own land may not infrequently have some effect to diminish the value of an adjoining estate, or to prevent its being used with the comfort which might otherwise have been anticipated, this is damnum absque injuria, as to which the law cannot interfere.' 1 Am. Jur., p. 505.

" 'It is well established as a general rule subject to certain modifications hereafter noted, that the owners of lands through or along the border of which a natural water course flows may accumulate surface water falling upon lands adjacent thereto, and cast the same into said stream, without liability to a lower riparian owner for damages, although the flow of water is thereby accelerated and the volume increased, provided that this is done in reasonable use of his own land.' 56 Am. Jur., p. 559.

"The above general rule obtains in Ohio. See **Mason v. Comm., 80 Oh St 151,** at 159; **Strohm v. Molter, 30 Abs 330; Nagy v. Akron, 27 Oh Ap 250, McCoy v. Rankin, 35 Abs 621; Blue v. Wentz, 54 Oh St 247.** In the latter case the Supreme Court said:—

" 'Syllabus 2. A lower tenement is under a natural servitude to a higher one to receive from it all the surface water, accumulating from falling rains and melting snows, or from natural springs, that naturally flow from it to and upon the lower one. This advantage of the higher tenement is a part of the property of the owner in it, and he is not indebted to the lower tenement therefor.'

"The law governing surface water in Ohio, following the Civil Laws, is stated in **41 O. Jur., p. 48, Sec. 46:**

" 'Surface water is that which is diffused over the surface of the ground, derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to, and does, flow with other waters, whether derived from the surface or springs; it then becomes the running water of a stream and ceases to be surface water. Where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies

lower than the other, the lower one owes a servitude to the upper, to receive the water which naturally runs from it. The owner of the upper piece of land has a natural easement in the lower piece, to the extent of the natural flow of water from the upper piece, to and upon the lower one.'

"In **Hamilton v. Ashbrook, 62 Oh St 511,** it was held:

" 'A municipal corporation is not liable for damages caused by such increased flow in a natural watercourse as results from the improvement of lots and streets within the territory whose waters naturally drain into such water course.' "

Defendant further argues that in the case of Florence Turowski, Plaintiff-Appellee, v. The City of Youngstown, Defendant-Appellant, Mahoning Appeals No. 3126, in which the supreme court overruled motion to certify, this court "considered the lateral ditch along the west side of the highway to be a natural drainage channel and attached liability against the city because under the state of facts this water was diverted from this ditch," and quotes this court's opinion as follows:—

"The lateral ditch along the west side of the highway in the present case seems to me to be a 'natural drainage channel' so far as the parties here are concerned and if all the defendant did was to accelerate the flow of water into that ditch, the 'Mason case' would be conclusively adverse to plaintiff's claim. But the entrance driveway, as constructed, did more. It was built across the highway ditch and there is substantial evidence that water ran down the entrance driveway over the lateral ditch, across the highway and thence on to plaintiff's farm.

"* * * The law, as deduced from these authorities, seems to me fairly clear. While mere acceleration of natural flow is not actionable, acceleration plus diversion is actionable. * * *

"There is substantial evidence in this case that the flow of surface water was not only accelerated along the concrete entranceway to the airport, but that such water was diverted thereby from flowing into the west highway ditch and was sent across the top of the highway into the east lateral ditch and thence overflowed plaintiff's lands."

Defendant's counsel then argues:—

"It is clear from the record in this case that the west highway ditch was not a 'natural drainage channel' but on the

contrary, only served to bring the water from the north and south down to the airport entrance, through the culvert and in and upon the natural water course upon the Turowski farm where it was carried by natural gravity three-fourths of a mile to a creek.

"If this court, therefore, had the instant record before it in the Turowski case, no liability would have attached as against the City of Youngstown.

"And contrariwise and paradoxical, if we accept here that the west ditch is a natural drainage channel, which it is not, then the city had a perfect right to accelerate water and increase its flow, and run it down the road to flood the Persin farm, as plaintiff claims the situation to be."

Defendant concludes its argument on this assigned ground of error with this statement:—

"Thus, under the rule above stated, and followed, in Ohio, the city had a right to accelerate and even increase the flow of the water into the Turowski ditch."

In the case we review, as in the case of Turowski v. City of Youngstown, supra, "there is substantial evidence that the flow of surface water was not only accelerated along the concrete entrance way to the airport," as well as elsewhere along the 6500 feet the airport fronted on Ohio State Route 90, "but that such water was diverted thereby from flowing into the west highway ditch, and was sent across the top of the highway into the east lateral ditch, and thence overflowed plaintiff's lands."

While in the exercise of the reasonable use of its land, plaintiff, a lower tenant, is under a natural servitude to defendant city, a higher one, to receive from it all surface water, accumulating from falling rains and melting snows, or from natural springs, that naturally flow from it to and upon plaintiff's land; yet under the facts in the case we review a question was presented for the determination of the jury whether defendant was indebted to plaintiff.

In our opinion the construction of the airport by defendant city under such conditions amounted to rightful and reasonable use of its land; but we cannot conclude that "the court erred in not holding plaintiff's claim was damnum absque injuria because of defendant's natural easement as upper proprietor and its inherent and statutory right to the reasonable use of its land for airport purposes."

Having reached the conclusions announced, it is obvious that we do not believe that the trial judge erred to defendant's prejudice in overruling its motion for judgment in its favor notwithstanding the disagreement of the jury on the urged ground that "there was no evidence showing any change of conditions with respect to flooding by the construction of the airport"; nor that the flooding was caused by any unlawful act on the part of the defendant; nor in any of the other respects urged by defendant city, all of which have been considered.

The judgment of the court of common pleas is affirmed.

NICHOLS, J, BUCKLEY, J, concur in judgment.