**BOETTLER, Plaintiff, v. BOARD OF TOWNSHIP TRUSTEES, GREEN TOWNSHIP et, Defendants.**

Common Pleas Court, Summit County.

No. 203954.   Decided March 11, 1960.

C. T. Moore, for plaintiff.

John S. Ballard, Pros. Atty., Daniel Quillen Asst. Pros. Atty., Joseph M. Holden, former Asst. Pros. Atty., Akron, for defendants.

## OPINION

By WATTERS, J.

### FINDING OF FACTS:

In July, 1956, the defendant Members of the Board of Township Trustees of Green Township, Summit County, Ohio, served on the plaintiff, Robert J. Boettler, a notice to stop casting water from a pond on his land, located in the southwest quarter of section 35 in Green Township, onto Mt. Pleasant Road, known as County Highway No. 7, which is the road along the line dividing Summit and Stark Counties in the vicinity. Thereafter, the plaintiff filed an injunction action to prevent the Township Trustees and/or the Summit County Engineer from coming on his land and doing work to correct the situation.

With the court's permission, the Members of the Board of County Commissioners of Summit County intervened and cross-petitioned asking for a court order to require the defendant to stop casting water from his pond onto the said county road. Thereafter, the plaintiff, Robert J. Boettler, filed an answer to this intervening cross-petition in which he asked for affirmative relief against the county in the nature of requiring the county to do something on its lands known as the Akron-Canton Airport, located to the east and northeast of plaintiff's land, in the nature of controlling the surface and stream waters which flow from the higher county airport land onto his land. To this answer the Members of the Board of County Commissioners filed their reply in the nature of a denial.

The plaintiff's land is approximately 64.64 acres in size. Prior to the acquisition by the county and the construction of the Akron-Canton Airport in the late years of World War II, the Airport land consisted of

hilly terrain which was used for pasturage and cultivated farm land. In its natural state the surface water over a certain area of this land found its natural drainage by flowing into two well-defined channels or watercourses on the Airport land, which, after confluence, flowed toward the southwest under a culvert at old Koon Road and onto the land of plaintiff, Robert J. Boettler. This area will be referred to as the Boettler watershed. After flowing onto the plaintiff's land in this fashion, the stream turned to the west and flowed naturally in this fashion to a certain north-south driveway, at which point the water entered an eight-inch underground pipeline, and continued in a westerly direction to plaintiff's west property line parallel to and several hundred feet north of Mt. Pleasant Road or County Highway No. 7. West of plaintiff's west property line, the water flowing in this watercourse entered a system of lakes, which in turn drained to the west. In the construction of the airport, the land was levelled by removing the high places and filling in the low, and runways and taxiways were constructed with paving material, and the areas around them were seeded to permit the growth of grass and the development of sod. This was done in the area known as the Boettler watershed.

After the airport improvement, the Boettler watershed drainage continued to flow as above described until the years 1951 or 1952. In about 1950, the plaintiff constructed a new residence on his property in the central part south of the above-described watercourses. In about 1952 the plaintiff, at the place where the stream passed under the old north-south driveway and entered the eight-inch pipe, constructed a pond or lake of several acres in area by making a dam or embankment running in a north-south direction along the old north-south driveway.

The lake or pond was designed by the plaintiff to drain into the old eight-inch line running to the west; additionally, and although the water had never flowed in this manner, the plaintiff constructed an **eighteen-inch** over-flow pipe at the southwest corner of the pond, which was designed to run due south along the west side of plaintiff's present north-south driveway, which is the same as the southern portion of the old north-south driveway. The southern terminus of this eighteen-inch over-flow pipe is in the north ditch of County Highway 7, which at this point slopes down toward the west. Although prior to the construction of this dam any water which the eight-inch pipe was unable to accommodate during heavy moisture periods flowed over the surface due west along the eight-inch pipeline, since the construction of the dam, all such water flows south through the eighteen-inch pipe onto and against County Highway 7 at a point due south of the dam. This discharge of water onto and against County Highway 7 has ever since its commencement resulted in great and extensive damage to this county road, and has impeded traffic and made travel along this road in the vicinity hazardous and unsafe.

The County Highway at the place where this eighteen-inch over-flow pipe meets the county ditch was never materially erroded or damaged by water prior to the construction of the pipe. The erosion and

damage to the road and the resulting hazard have not only continued ever since the construction of the eighteen-inch pipe, but also will in probability continue until this situation is corrected.

The court further finds that all the land adjoining the plaintiff's (Boettler) land upon the east and upon the north, is owned by the Board of Commissioners of Summit County, defendant herein, and that said land was acquired by said defendant, along with other lands contiguous thereto, in the years 1943 and 1944, and contains an area of approximately 1100 acres. Said lands were acquired for the purpose of constructing what is known as the Akron-Canton Airport, and lie generally higher in elevation than the Boettler land.

In the construction of said airport, the defendant, Summit County Commissioners, caused or permitted its said land to be graded, and the topography thereof to be changed, in that said lands were levelled, and storm water (surface water) drains were installed thereon at various· points where the land was paved, and thus made impervious to surface water, seepage, and percolation by the constructing of hard surfaced runways and landing areas and buildings upon its lands for aviation purposes.

By said grading, hills were graded down to level and gullies filled, and the level area resulting was hard surfaced, as aforesaid, and the surface waters which would naturally seep into the soil of said large area, or be disposed of by evaporation or other natural means, were collected upon said hard surfaced area (of hundreds of square feet) **and directed and diverted** in greatly accelerated and increased quantities to the various catch basins or drains, constructed, as aforesaid, at various points in and around said hard surfaced area, which collection of "unnatural" surface water was piped into the natural waterway from the said drains on the lands of the commissioners, and said excess "unnatural surface" waters so collected and accelerated and diverted, flowed down said waterway from the said defendant's upper lands, causing said waterway upon the "Boettler" land to overflow upon his land in a greatly accelerated and increased volume, even when the rainfall was of a normal degree in amount; theretofore, such rainfall creating natural surface water, would have been handled by seepage into the grassy, overgrown, then porous, soil of the upper (airport lands) in their natural state by seepage into the natural soil, and by its flow naturally into the prior depressions, and by evaporation therefrom, and by its flow naturally in directions other than into the said waterway, prior to the grading, levelling, and filling, and diversion, and hard surfacing of the terrain of the upper **airport property**, which directly and proximately increased and accelerated and overburdened the capacity of the natural waterway to handle the increased flow of surface water thereinto, and thereby plaintiff's (Boettler) land would naturally be damaged and rendered unfit for tillage and farming.

Said conduct and the result thereof constituted a trespass upon plaintiff's lands, resulting in a nuisance thereon, and at least a partial confiscation thereof.

At this stage of the situation, the airport, on or about May 18, 1948,

188

through the then manager of the Akron-Canton Airport, apparently on behalf of the Board of Trustees thereof, wrote the plaintiff, Boettler, as follows, in part (see Plaintiff's Exhibit 1):

"At a recent meeting of the Board of Trustees, your problem was discussed at some length. Steps are being taken to arrange for the two counties, Summit and Stark, to proceed with corrective measures." (Emphasis by the court.)

"It is planned to create a pondage on the airport property at the location of the 4 x 4 culvert under the old Koons Road . . ."

(See remainder of said letter.)

This, the court finds, was a definite recognition of the existing situation and its effect on plaintiff's property and the need of corrective measures of some nature by the airport authorities.

However, nothing was done, and the plaintiff, Boettler, in 1950, constructed a new residence on his property, and in 1952 proceeded to construct the dam aforesaid upon his property with the 18-inch over-flow pipe at the southwest corner thereof, as aforesaid herein, the outlet of which pipe emptied into the north ditch along said county highway (7), also known as Mt. Pleasant Road, with the results stated hereinbefore.

### THE LAW APPLICABLE . . . . (FINDINGS OF LAW)

There are two rules generally speaking in Ohio regarding surface water, as regards the upper or higher estate and the lower or "servient" estate of adjoining land owners.

The so-called **rural rule or civil rule that is outside of a municipality or village, is that the lower estate, that is, the land adjoining, lower in grade, is generally bound to accept the natural surface waters, flowing from the so-called upper estate.** This rule is subject to exceptions as will be discussed later.

In Ohio, under the so-called **urban rule, within a municipality**, under 95 Oh Ap 383 (1953), Lunsford v. Stewart, and 102 Oh Ap 324 (1956), Keiser v. Mann (motion to certify overruled in 166 Oh St 190, February 20, 1957), it is held that the lower adjoining owner is not bound to accept the natural surface water flowing from the higher estate, and there is no liability upon the lower owner, if he raises the grade or level of his property, in a reasonable manner, even though in so doing he dams up or obstructs the natural flow of surface water from the upper estate, and causes said water to back up and stand upon the higher estate, where formerly it had flowed therefrom, across the lower estate.

In the case at bar, the lands in question lie in a rural area, outside of a municipality, so the urban rule is not applicable. Therefore, we apply the so-called **rural rule**, subject to its modern and common sense interpretation.

The court has stated the general rural or civil rule, requiring the lower estate to accept the **natural** surface water flow from the higher estate.

The natural drainage of diffused surface water from the land of one person onto that of another has aspects both of quantity and of location. Some of the surface water which accumulates on the land of the upper owner may flow off in one direction and some in another,

and some may accumulate on the surface, in depressions, etc., to pass off ultimately by percolation into the soil, or by evaporation. Generally, the law above requires the lower owner to receive only that part of the surface water which naturally passes over his land from the upper owner, and to receive it only in the places where it naturally flows.

Accordingly, the upper owner cannot discharge, directly onto the lower owner, surface water which but for changes made by him, would have evaporated or passed off in another direction over the lands of others. (In substance from page 18, Principles of Water Rights Law in Ohio. See later herein.)

See **Butler v. Peck, 16 Oh St 334 (1865):**

"To hold that the upper owner may divert water which has no natural outlet over the lands of the lower owner would be 'to sanction the creation of an easement which nature has denied.' The water in question was surface water which had collected in a swamp like area on the upper land."

In spite of said rule just stated, there are authorities in Ohio that hold that the upper owner, without incurring liability, may channel his surface water into a water course passing through his land, thus increasing the volume, and accelerating the flow of the water course. See **Mason v. County Commissioners, 80 Oh St 151 (1909). But see also the more modern case of Persin v. Youngstown, 57 Abs 560** (1940, Mahoning County Court of Appeals).

This case also involved the construction of an airport by the City of Youngstown, which diverted and accelerated the surface water flow from said land affecting lower owners.

The court held on page 569, quoting from its unreported case No. 3126, Torowski v. Youngstown, involving the same airport:

"The law as deduced from these authorities seems to me fairly clear. While mere acceleration of natural flow is not actionable, acceleration plus diversion is actionable.

"There is substantial evidence in this case that the flow of surface water was not only accelerated along the concrete entranceway to the airport, but that such water was diverted thereby from flowing into the west highway ditch and was sent across the top of the highway into the east lateral and thus overflowed plaintiff's lands."

See also **41 O. Jur., page 52, Section 51 (1st Edition),** as follows:

"A natural water course may be created by the flow of surface water, but the rule is well established in Ohio that the owner of land cannot by artificial means, divert the natural flow of the surface water off his lands, nor can he by an embankment or otherwise divert the natural flow of the surface water off the higher land in a manner different from its natural flow onto his land without liability therefor."

See also **39 O. Jur. 466, Section 11 (1st Edition),** where the author discusses the law of the **Rueckert v. Sicking, 20 Oh Ap 162,** an urban or city case, and the rule of trespass established in **Barberton v. Miksch, 128 Oh St 169** (tried by Judge Arthur W. Doyle), involving trespass upon lower adjoining lands, by percolation of waters from the Barberton Reservoir, located in a rural area, and holding liability upon the part

of the City from such trespass, for damages proximately resulting from such trespass, is not dependent upon proof of negligence upon the part of the City. This case was reported by the Supreme Court in 1934, and sustained the trial court and the court of appeals. See also **"Principles of Water Rights Law in Ohio,"** by Charles C. Callahan, College of Law, Ohio State University, and printed (1957 and 1959) by the State of Ohio, Department of Natural Resources, Division of Water, at pages 17, 18 and 19, sections 45 and 46 and 47, etc.

This publication is a very fine treatise on the law of Water Rights in Ohio and is now in our Law Library and may be procured from the State Department above.

From section 45, page 17, at the bottom paragraph, it says:

"It is clear that the question, on the one hand, of the liability of the owner of the lower land for obstructing the flow of surface water and, on the other, of the liability of the upper owner for increasing or otherwise changing (**or diverting**) such flow, are reciprocal." (Note words emphasized and added by this court.)

Then, continuing, the author states:

"The answer to each question depends upon the amount and nature of surface water which the law requires the lower owner to take. If the lower owner obstructs water, which the law requires him to take, he, of course, is liable. If the upper owner precipitates onto the lower land, water which the law does not require the lower owner to take, the upper owner is liable, such action is a trespass and renders the upper owner liable regardless of whether he may be said to have been negligent in the manner in which his improvements have been made."

The court here cites **Barberton v. Miksch, 128 Oh St 169 (1934),** discussed herein supra.

See the case of **Lucas et al v. County Commissioners of Mahoning County, 167 Oh St 416,** decided April 2, 1958.

This is a very interesting and far reaching case, and is particularly pertinent to the case at bar, as it also involves the improvement of public lands belonging to the said county, in such a way as to injure plaintiff's lands and personal property thereon, which lay lower in grade than that of the county.

In 1954 the said commissioners purchased and improved a large tract of land lying above and adjacent to plaintiff's lands for the purpose of building a county garage thereon. In improving said tract, the grade, level, and contour of the county's said land was materially changed and altered by grading, filling, and stripping of surface growth, grasses, and undergrowth, and by sloping same in such a manner, that the surface water flow from said lands was materially changed, diverted, increased, and accelerated and cast upon plaintiff's lands so as to **permanently** damage the buildings, cellar walls and even personal property of the owners stored in the buildings thereon.

As shown in the syllabus, and by the facts, as to what the commissioners did upon the County's lands (page 418), by the various paragraphs, commencing with the words, "In the spring of 1954 . . .," etc., it is obvious that the question of negligence upon the part of the com-

missioners was not involved, nor was the question or principle of, "so use your own property that you do not injure that of another," but only the principle of appropriation by encroachment, or trespass.

See also Judge Stewart's statement on page 425, beginning, "It must be remembered . . .," etc.

The following is the syllabus of this case:

"Where, in creating a public improvement upon land which it owns, a county without negligence or malice but solely as a result of the creation of such improvement physically encroaches upon the land and property of another owner and deprives that owner of any of the use and enjoyment of his property, such encroachment is a taking pro tanto of the property so encroached upon, for which the county is liable, and the owner of such property is entitled to institute an action and have a jury impaneled to determine the compensation due him from the county for the appropriation pro tanto of his property."

However, neither litigants contemplate or desire any appropriation proceedings, and Mr. Boettler desires to keep his pond.

## CONCLUSION

It is obvious from the finding of facts above and the law as found by the court that the defendant, the County Commissioners, by the construction of said airport as set forth above, trespassed upon the lands of the plaintiff and created a nuisance and at least a partial confiscation thereof, which would have given the plaintiff the right to injunctive or other relief. However, instead of pursuing said course, the plaintiff proceeded to take the matter into his own hands by constructing his dam and impounding the excess and accelerated surface water in large quantities and by the construction of the 18-inch pipe overflow, caused said overflow of water to be precipitated in an accelerated larger quantity into the northerly ditch of County Road 7, overflowing the same and damaging said ditch and road, as set forth herein, thereby trespassing upon the public highway and creating a public nuisance thereon and a dangerous public hazard.

During the pendency of the case, the court, in view of solving the situation so that the plaintiff could still maintain his pond, without damage to the road, by elimination of the overflow thereunto, and to solve the problem generally, requested the County Engineer and plaintiff's engineer to submit recommendations to the court, which was done by consent of counsel.

These reports are in evidence as Joint exhibits (4) by Mr. Vance L. Riley, engineer for Mr. Boettler, the plaintiff, and Joint Exhibit 5 by Mr. Ralph Van Brimmer, deputy county engineer for the Commissioners. These reports speak for themselves.

The court should mention, however, that Mr. Riley's premise (Joint Exhibit 4), the last paragraph on page 1, that, "Since the master plan of the airport includes the future acquisition of the land by Mr. Boettler," is incorrect. As the evidence shows, no such acquisition is contemplated, although it would be a solution not desired by Mr. Boettler at all.

Both engineers agree that the most feasible solution from their reports is plan number 2 of Mr. Van Brimmer's (Joint Exhibit 5) and plan number 4 in Mr. Riley's report (Joint Exhibit 4).

After these reports were in, the court requested the engineers to submit an estimate as to costs. Plaintiff's engineer did not respond, but Mr. Van Brimmer for the county submitted the costs estimated **on plan number 2 in Van Brimmer's report, and also plan number 3 therein** (see Joint Exhibit 6).

In fairness to Mr. Riley, in his failure to submit an estimate, the court assumes that he had no material disagreement with Mr. Van Brimmer's estimate (see Joint Exhibit 6).

As set forth before, the engineers jointly agree on method (2) as shown in Joint Exhibit 5, the estimated cost of which, as of April 21, 1959 was $3188.10. Said method (2) and the estimate thereon as shown in the respective joint exhibits is made a part hereof as though re-written herein.

This is an action in equity, in which the litigants each ask for equitable relief, one against the other, and the court, as a solution, must balance the equities of each in an attempt to do equity by and between the parties.

The airport must and will go on and may in the future, by extended hard surface runways and extension of buildings, etc., further increase and accelerate the unnatural surface water; and it may eventually come to pass that the airport authorities, through the county commissioners, will eventually find it necessary to appropriate all or a portion of Mr. Boettler's land for a large impounding reservoir, perhaps in conjunction in some way with the present Boettler pond or lake. As said before, this is not now contemplated, nor desired by either litigant, as shown above, and by the evidence.

Therefore, the court orders, adjudges and decrees that said plan number 2 be carried out by the Summit County Commissioners, acting through the County Engineer's Department, as supervisors of said project, and actually performing the work and furnishing the materials, etc., or, if desired, or legally necessary, by letting out all or a portion of said work, all to be done at the lowest reasonable cost or figure possible or obtainable. Said cost to be borne three-fourths by the County of Summit, and one-fourth by Mr. Boettler (but not to exceed $800.00 as to Mr. Boettler).

As a suggestion, it may be probable that the airport authorities could be legally persuaded to take over the entire cost from the county and Mr. Boettler.

To say the least, this would be a happy solution and is worth trying to work out.

Counsel will furnish the proper entry, with exceptions to all litigants concerned.

Court costs to be assessed in the proportion as above stated, but with the same limitation as above set forth.