Day et, Plaintiffs-Appellees, *v.* Mummey, Auditor, et, Defendants-Appellants.

Ohio Appeals, Seventh District, Lake County.

No. 711.  Decided November 18, 1963.

*Mr. Wm. M. Hubbard* and *Mr. M. Vincent Conway,* for plaintiffs-appellees.
*Mr. Wayne E. Davis,* for defendants-appellants.

*Per Curiam.*  This appeal is on questions of law and fact from decree entered by the Common Pleas Court of Lake County enjoining the levy of special assessments for storm sewers against plaintiffs' properties.

In 1932 a twenty-four inch storm sewer was installed in front of plaintiffs' properties fronting on Center Street in the City of Painesville.  At the time of this installation a tract of some one hundred thirty acres lying generally to the south of the Center Street properties was relatively undeveloped.  This

one hundred thirty acre tract, hereinafter called the uplands, was on a higher grade than plaintiffs' properties and the natural flow of surface water would be from the uplands past and over plaintiffs' properties on Center Street.

The undisputed testimony was that since 1932 no flooding conditions had occurred on Center Street, and counsel conceded that there had been no appreciable further development or improvement of the properties fronting on Center Street that would produce acceleration of water flow there.

In 1958 Painesville City Council found it necessary to construct a new storm sewer, draining the entire area and including both the uplands and plaintiffs' Center Street properties. The new sewer line was installed as an addition to, not a replacement for, the original sewer and the original sewer was cross-tied to it at various points.

The Center Street properties were assessed for a portion of the installation cost of the new sewer as having been benefited by its installation.

Plaintiffs' claim for relief from the assessments is grounded on the provisions of then existing Section 727.15, Revised Code, which provided:—

"* * * Assessments levied for the construction of main sewers shall not exceed the sum that, in the opinion of the legislative authority, would be required to construct an ordinary street sewer or drain of sufficient capacity to drain or sewer the lots or lands to be assessed for such improvement, nor shall any lots or lands be assessed that do not need local drainage or which are provided therewith."

Based on the concession that the build up on Center Street was substantially complete in 1932 and the testimony of adequate service of the line for some thirty years we must conclude that the lands in question were and are adequately provided with drainage without reference to the new line unless certain testimony of the city's engineer is given effect. *Wewell* v. *City of Cincinnati*, 45 Ohio St., 407; *City of Cincinnati* v. *Doerger*, 98 Ohio St., 161. The property owners fully complied with the assumption of the burden of proof as laid down in *City of Cincinnati* v. *Polster et al*, 96 Ohio St., 155.

The City Engineer's testimony was that the 1932 sewer was inadequate to service local drainage requirements from the

larger area including the uplands. In this connection he took into consideration for the study not only the requirements and development of the entire area at the time of his study, but the probable rate of development of the uplands in the future. (Record pages 47, 51.)

In view of the fact that the 1932 sewer was completely successful on a performance, rather than a theoretical, basis, we cannot give effect to this testimony of the engineer unless it can be demonstrated: That the term "local drainage" can be enlarged from time to time as contiguous drainage areas become built up; that acceleration and diversion of surface waters flowing from nearby uplands after they have been improved and hard-surfaced can be considered as properly burdening previously storm sewered properties.

As to the first point, we believe the local area was designated and delimited in 1932, and it is the properties serviced from and after that time that must be considered the local area in question. In this respect the city's engineer never claimed that the normal drainage from these particular properties was inadequately handled by the 1932 sewer. He insisted, at all points in his testimony, on adding to his calculations the computed drainage effects from the upland area far removed geographically from the plaintiffs' properties. In this respect the City's refutation of the showing of adequacy of local drainage failed.

But even assuming that the city could progressively redefine and enlarge the area of "local drainage" at this late date we think its claim of inadequacy still fails.

The claim depends essentially on the effects of acceleration and diversion of the uplands water flow as building occurs, grassed areas decrease and hard surfaces and roof tops promote more and faster water run-off at points upgrade from plaintiffs' properties. The individual lower property owner has no obligation to take any such increase of surface water where diversion and acceleration are factors. *Lucas* v. *Carney*, 167 Ohio St., 416, 149 N. E. (2d), 238; *Lunsford* v. *Stewart*, 95 Ohio App., 383, 120 N. E. (2d), 136 (Tenth District); *Persin* v. *Youngstown*, 57 Ohio Law Abs., 560 (Seventh District); *Johnson* v. *Goodview Homes-1, Inc.*, 82 Ohio Law Abs., 526, 167 N. E. (2d), 132.

If this is true as to the individual properties' lack of obligation to take such additional drainage, it is certainly true as to their lack of collective obligation to be assessed for carrying off such increase by additional sewers.

We conclude, as did the trial court, that the city is precluded from assessing any portion of the cost of the 1958 storm sewer upon lands of plaintiffs because these lands were already provided with adequate sewer. Decree may be entered for the plaintiffs.

BROWN, P. J., FRANCE and JONES, JJ., concur.