## McCOY v RANKIN

Ohio Appeals, 2nd Dist., Fayette Co.

No. 248. Decided Dec. 24, 1941

622

Troy T. Junk, Washington C. H., for defendant-appellant.

N. P. Clyburn, Washington C. H., and Ray R. Maddox, Washington, C. H., for plaintiff-appellee.

## OPINION

By GEIGER, PJ.

This case comes before this Court on appeal on questions of law and fact from a judgment of the Court of Common Pleas of Fayette County. The pleadings in the case are lengthy and we shall present the salient points as briefly as possible.

The plaintiff alleges that the defendant is the owner of 25 acres in the Township of Jasper, County of Fayette, adjoining the lands of the plaintiff; that the plaintiff is the owner of a tract through and over which a watercourse or channel is located; that the natural flow of the surface water has its head in the lands of Ewing and Charles Fitchthorn, and then runs over the lands of McCoy, plaintiff, and the lands of Roy Rankin, defendant, and from there over various other lands until it discharges into Sugar Creek; that the natural flow supplies the drainage for nearly 700 acres of land and during heavy rains or melting snow carries a large amount of water.

It is further alleged that the lands of the plaintiff lie at an elevation above the lands of the defendant, such elevation being sufficient to furnish adequate drainage for the lands of the plaintiff and the lands of Fitchthorn.

It is alleged that on the 10th day of March, 1939, the defendant constructed on his tract of land across the channel or flow of said drainage a dam to the height of about four feet, thus obstructing the natural flow of water draining the lands of the plaintiff, and that waters are set back upon the lands of the plaintiff and the water level raised and maintained at a higher elevation than in its natural state, rendering the lands of the plaintiff boggy and unfit for pasture or cultivation. It is asserted that the dam would operate to the great and irreparable injury of the lands of the plaintiff, for which he is without adequate remedy.

After preliminary motions were made and sustained in part, the defendant filed an amended answer admitting that he is the owner of the land adjoining the land of the plaintiff and denying all other allegations.

For an amended cross-petition defendant says that on or about the 26th of January, 1909, proceedings were had before the County Commissioners for the construction of what is known as the Ford County ditch; that the easterly terminus of said ditch as constructed in 1909 is on the west bank of Sugar Creek near the west terminus of a bridge over Ford Turnpike, and that from said point said ditch extends upstream in a westerly direction through certain lands described, crossing a road and over the lands now owned by the plaintiff. It is asserted that said county ditch was constructed with a 15-inch tile through the lands of the defendant and the plaintiff; so as to permit the land to be farmed over the tile except a small tract. It

is asserted that said lands by virtue of the tile drainage were rendered productive and that defendant has obtained valuable crops immediately over the tile, and that since the construction of this ditch there has been no surface water flowing along the course of said ditch during periods of unprecedented rain.

The defendant says that during the fall of 1938 the plaintiff constructed a tile drain on his premises, which with laterals comprised 400 rods of new tile and drainage; that said tile was so constructed as to extend to the county ditch at a point 100 rods from the defendant's land; that the plaintiff suffered the new tile ditch to discharge its waters over the top of the county ditch.

It is asserted that by reason of the acts of the plaintiff in so constructing the outlet of the new tile he has caused large quantities of water to flow over the surface of the ground along the course of the county ditch, increasing the flow beyond the capacity of the county ditch, thus increasing the servitude of the defendant's land; that by reason thereof defendant's lands were rendered boggy and resulting in irreparable injury to the defendant, for which there is no adequate remedy. Defendant prays that during the pendency of this suit the plaintiff be ordered to connect his new tile drainage with the Ford ditch and from further causing overflows of water, and that such order may finally be made perpetual.

On January 25, 1941, the cause came on for hearing and the Court found in favor of the plaintiff and against the defendant, and that the plaintiff is entitled to the relief prayed for, and that the defendant's cross-petition be dismissed. It was ordered that within thirty days the defendant remove the dam across the natural drainage system for surface water drainage and that he be enjoined from maintaining said dam.

. To this judgment of the Court notice of an appeal to the Court of Appeals was given, the same being on questions of law and fact. On October 4,

1941, while the cause was pending in this Court, McCoy filed a motion to dismiss the appeal for failure of the defendant to file briefs within specified time. This motion was overruled.

It was agreed between counsel that the cause should be submitted on the transcript of the testimony and upon certain depositions.

The substance of the complaint upon the part of the plaintiff is that the defendant by construction of a dam, four feet high at the road between his land and the land of the defendant has caused water to be backed up upon the land of the plaintiff to its injury.

The substance of the cross-petition is that the plaintiff by the construction of a new tile drain overtaxed the capacity of a county drain causing the water flowing through the new drain to pass upon the lands of the defendant to its injury.

Depositions and elaborate briefs have been filed by both sides and an agreement stipulating the testimony taken in the trial below.

The evidence relates largely to the flow of water, the contour and topography of the lands, the natural flow of surface water and the extent to which the same has been affected by artificial means, either by its increase or by its diminution by reason of obstructions erected which might affect the natural run-off of the water. We also have involved the question as to the right of the owner of land to accelerate the flow beyond the flow of the natural drainage.

After reading the full record we may epitomize what seems to us to have been established from the evidence and the admission of the parties.

In 1909 such proceedings were had by the County Commissioners that what is known as the Ford county ditch was constructed, partly on the land of the plaintiff and partly on that of the defendant, as well as upon the lands of other property owners. Seven hundred acres of land received tile drainage from this county ditch. It was constructed at least through a part of its course with 15-inch tile.

Counsel differ concerning the extent of the territory which the Ford ditch drains. The difference is not essential, except as it may bear upon the drainage of 30 acres recently tiled by plaintiff. The defendant claims that surface water from these 30 acres did not naturally flow upon his land, but was an increase of the burden above the natural flow. We have been unable to find evidence which persuades us that there was an appreciable increase of the flowage from a drainage project beyond that provided by the natural contour of the land.

It appears that the tile laid in the construction of the Ford ditch was approximately along the course of a pre-existing open ditch at a depth at some points below such open ditch. After the tile was laid in the Ford ditch the channel was filled and leveled off in order to render the land over the tile suitable for cultivation. Such surface condition has been since maintained through the lands of plaintiff and defendant, excepting that part of the ditch which passed through a small woodland field which had never been under cultivation. This provides an open ditch for a distance of 600 feet north of the lands of the defendant. Such open ditch has an average depth of 3½ feet. The open ditch was continued south of the road separating the lands of the plaintiff and defendant for some 75 feet, and was permitted to remain in its present condition since the construction of the Ford ditch. It is claimed by the defendant that had this open channel, as it now exists on the premises of the plaintiff and the defendant, been filled in accordance with the specifications for the construction of that ditch that the dam would not have held back any water upon the plaintiff's land, due to the fact that the height of the dam does not exceed the depth of the original channel.

During 1938 and 1939 the plaintiff, starting at a point 600 feet west of the lands of the defendant and at a point in the woodland where the old channel had not been filled, constructed a new 10-inch tile drain substantially parallel to the 15-inch tile of the Ford county ditch upstream for a distance of 2700 feet and westerly of this point laid an 8-inch tile for a distance of almost 2000 feet. This new tile ditch with its laterals aggregated practically 1¾ miles in length. The outlet of the 10-inch tile is over the Ford 15-inch tile, slightly above that structure. At the termination of the 10-inch tile plaintiff placed a 12-inch "Y", one projection of which extended down to the old tile and the other extension is left open for the passage through it of excess water into the open ditch. It appears that during times of excessive rain the surface water flows over the course of the Ford tile along the entire course of said ditch. It is claimed by the defendant that the plaintiff as late as the spring of 1941 laid an 8-inch tile with its lower opening about 200 feet west of the road dividing the lands of the plaintiff and defendant.

It is claimed by the defendant that his new 8-inch tile was so laid that it drained about 30 acres, the water from which did not naturally flow along the course of the Ford ditch, thus imposing upon the defendant's land the additional burden of the water flowing from this 30 acres not seeking that outlet over his land until the construction of the 8-inch tile. The defendant claims that the plaintiff constructed a surface ditch somewhat distant from the established watercourse resulting in increasing the burden upon the defendant to carry away surface water that would otherwise not have flowed over his land.

Counsel for plaintiff and defendant differ in their construction of §6500 GC, which provides that when a ditch has become the outlet of agricultural drainage and has been used for seven years or more. it shall be deemed a public watercourse, notwithstanding any defect in its original construction, and that after such lapse of time the privileges which relate to natural watercourses shall be enjoyed by the public. It is claimed by the defendant that by the provisions of this section the Ford

ditch is different from the old ditch and that its construction supersedes the rights and privileges of the parties in reference to the flowage of water as the same may have existed before the construction of the Ford ditch. The defendant claims that by virtue of this statute the plaintiff can not avail himself of the open drain in the woodland to furnish him an outlet for his new 10-inch tile, but would be required to connect his 10-inch and 8-inch tile with the larger pre-constructed Ford ditch. Defendant claims that the plaintiff has no right to cause the water gathered by his 10-inch and 8-inch tile to flow into the open ditch in the woodland and from there take a course over the defendant's land. It is also claimed that all parties have the right to have their lands drained through the Ford 15-inch tile and defendant claims that the plaintiff has no right to cast on top of the ground water which he has collected through the recent construction of the tile drain, and it is asserted that the action of the plaintiff has the effect of breaking the main line of the Ford tile, permitting the water to flow off on top of the ground. The defendant claims that all parties have a duty in respect to the use of the county tile in the manner for which it was intended, and that the plaintiff can not by the use of the 10-inch tile, with an opening into the ditch in the woodland, destroy the purpose of the county ditch.

We are not impressed with the fact that the rights of the parties are to be controlled by the construction of the Ford drainage tile due to the provisions of §6500.

The question for us to determine is, first, whether the defendant has a right to construct a dam impeding the natural flow of the water from the plaintiff's land; and, second, whether the plaintiff has a right to accelerate the flow of the water from his land, or possibly to increase it by a tile system which brings into the basin some 30 acres not by nature drained over defendant's land.

## RIGHTS OF ADJACENT PROPERTY OWNERS.

We find an interesting discussion of the rights of respective land owners for the flowage of surface water in 41 O. Jur., pages 48 et seq. The text is supported by citations which we shall note but which we shall not discuss at length, but only point out some principles which we deem applicable to the present situation. The text quotes from the cited authorities as follows:

"Where two parcels of land belonging to different owners lie adjacent to each other, and one parcel lies lower than the other, the lower one owes servitude to the other to receive the water which naturally runs from it. The owner of the upper piece has a natural easement in the lower piece to the extent of the natural flow of the water from the upper piece to and upon the lower one."

The right which the higher tenement has to require the lower one to receive the surface water that naturally drains upon it is a right incident to the higher tenement and a part of the property of the owner in it. The extent of this servitude is limited to surface waters that naturally find their way over the subservient estate, and it can not be artificially changed to the damage of adjacent property owners. The rules of the civil law requiring the owner of the lower land to receive the surface water from the higher land prevail in Ohio, and the owner of the lower land can not obstruct the flow of the surface water. The erection of an embankment upon one's own land whereby the surface water on the adjoining land is prevented from flowing in its natural course is a nuisance for which an action may be maintained without showing actual damage. The rule adhered to in Ohio is that where a natural depression exists on the land of the upper proprietor, he may collect the surface water upon his land and discharge it into the depression on his own land without liability to the lower owner. The owner of the land can not

so control the flow from the higher land as to impose a greater burden upon the lower land than that which arises from the contour of the land. The general rule is that the dominant land owner may in the reasonable use of his land drain the water from it into its natural outlet and thus increase the volume and accelerate the flow without incurring liability. He may not do this beyond the capacity of the watercourse in its natural drainage, and if he does so he is liable.

The text as we have above commented upon is sustained by **Butler v Peck, 18 Oh St 334; Nagy v City of Akron, 27 Oh Ap 250; Strohm v Molter, 30 Abs 330; Blue et v Wentz, 54 Oh St 247; Mason v Commissioners, 80 Oh St 151,** wherein the Court held in substance that a land owner may in the reasonable use of his land drain the surface water into its natural outlet upon his own land and thus increase the volume and accelerate the flow without incurring liability from the owners of the lower lands. The defendant takes the position that inasmuch as there is an additional flowage upon his lands, by reason of the diversion to the channel of the water from the 30 acres, that he has the right to protect his own land by building a dam which does not, due to its lack of height, back the water upon his neighbor's land so as to overflow the open ditch in the woodland above referred to. It is asserted by the defendant that the evidence shows that the building of the dam did not cause the water to rise any higher on the plaintiff's land than it did before its construction.

The query has arisen in the mind of the Court as to why the defendant wished to build a dam at the roadway if it were not for the purpose of backing up the water on plaintiff's land. The defendant attempts to answer this query on page 14 of his brief in which it is claimed that the witnesses have testified that the embankment was thrown up for the purpose of holding back only the water that flowed from the open 10-inch tile; that this tile carries an immense quantity of water

for days and even weeks after the normal overflow. Defendant seeks to protect himself from the waters flowing through the 10-inch tile and the 8-inch tile by holding it back and away from his cultivated lands and thereby prevent seepage over such fields. Defendant admits that if the plaintiff has a right to maintain his new tile in the manner in which it has been constructed, then the defendant has no right to materially obstruct the additional flow. The defendant claims that instances have occurred where, after a heavy rain, the 10-inch tile cast water into the open ditch and upon the lands of the defendant at a time when otherwise there was no surface water to be seen. The defendant advances the position that the plaintiff has no right to come into court seeking equity unless he comes with clean hands, and that he has so built his tile drains as to cast an undue burden upon the defendant. This is true, if it has been shown that the plaintiff has so diverted the flowage of water from the higher level as to put an unnatural burden upon the defendant.

We are of the opinion that the plaintiff had the right to drain his land into a natural channel and ▆▆▆ permit it to flow over the land of the defendant within the confines of the natural channel there existing, and he further had the right to accelerate the flow by gathering the waters flowing upon his land by virtue of new tiling, which accelerated the passage of the water from the surface of his land, so long as he did not gather and send down upon the defendant's land waters that would not have naturally flowed in that direction. We have already stated that the evidence does not show that there has been any appreciable increase of water from the 30 acres, not by nature draining upon the defendant's land.

The defendant has no right to impede the flow of this water coming from the dominant land owner ▆▆▆ by the construction of a dam and we are of the opinion that the reason he gives for the

construction of this dam does not, by the evidence, disclose a right to dam back the waters coming from the plaintiff's land. The defendant indulges in considerable speculation as to what should have been done by the County Commissioners in 1909. The fact is that for many years this project has been completed and it is now too late to say that had the Commissioners constructed the Ford ditch in accordance with specifications, that there would have been no occasion to build the dam upon the defendant's property. The plaintiff is but exercising his right in gathering the water upon his land by tile drains and delivering it to an open channel on his own land, which has afforded drainage of water for many years from his land to that of the defendant.

In the reply brief for appellant the matters are pertinently commented on. The appellant there contends that there is no open ditch; that the old ditch was abandoned as a result of the county ditch in 1909 and the lands leveled off for farming purposes. He admits that there are depressions in plaintiff's woodland which are the remnants of the former ditch as a result of failure to level off the land as was done in other places were the tile was laid. The appellant points out the fact that the county ditch did not follow the old ditch in the woodland and the contention is made that the open ditch was in effect vacated and abandoned. The appellant contends that there is no channel now existing over the lands of the plaintiff and the defendant but that all such lands are farmed. Appellant admits there are depressions which accommodate surface water, but disputes the statement made by the appellee that there is no evidence tending to prove that the plaintiff, by artificial means, created an outlet or diverted the natural flow, the contention of appellant being that the ten inch tile and the eight inch tile laid by the plaintiff discharged an extra burden of water only a short distance from defendant's land, and that the drainage of the thirty acres as diverted by the

the new tiling flows the water from such tract on to his land, contrary to its natural flow. It is contended by the appellant that the dam being only three and one-quarter feet high, is lower than the top of the cultivated land immediately over the county tile. It is admitted that the dam does back water up into plaintiff's woodland but that that is the extent of its effect.

We are of the opinion that the matter advanced by the appellant's reply brief does not militate against the conclusions we have reached as above set out.

Judgment of the Court of Common Pleas was correct and may be entered as the judgment of this Court.

HORNBECK & BARNES, JJ., concur.