COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

S & M LAND COMPANY, INC., Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1972.

Rehearing Denied Dec 15, 1972.

Don Duff, Gen. Counsel, C. E. Skidmore, Dept. of Highways, Frankfort, for appellant.

Donald P. Moloney, Moloney & Moloney, Henry C. Smith, Rosenbaum & Smith, Lexington, for appellee.

CATINNA, Commissioner.

S & M Land Company is owner and developer of the Stonewall Estates Subdivision in Fayette County. In 1966 it was in the process of developing a tract of 25 acres adjoining the Clays Mill Road on the east and the Zantker farm on the north.

On April 4, 1966, S & M conveyed to the Department of Highways a 1.9-acre tract out of the northeast corner of the 25-acre tract where it adjoined the Clays Mill Road to be used in the construction of the New Circle Road. The road was constructed on a fill along the entire south side of the 1.9-acre tract. Natural drainage is from north to south. After construction, drainage from north to south was by means of an 18-inch culvert near the western boundary of the 25-acre tract, which drained a two-acre watershed on the Zantker property, and a 30-inch culvert near the center of the tract which drained a 12- to 18-acre watershed on the Zantker property. There was another culvert near the Clays Mill Road which is not here involved.

Prior to the construction of the road, surface water from the Zantker property spread over a wide area and caused no drainage problem because of the wide range of the flow and its seepage into the ground. After the construction of the road and the installation of the 30-inch culvert, surface water from the Zantker watershed was collected in ditches on the north side of the road, discharged through the culvert to the south side, and into a ditch through which it was caused to flow some 250 feet to the west where the ditch intersected another from the 18-inch culvert. All water thus collected then emptied into a natural drain along the west boundary of the S & M property.

It is admitted that before the construction of the road all surface water from the Zantker property eventually emptied into the natural drain on the S & M property. However, it is claimed that after the construction of the road, the ditches, and the 30-inch culvert this same surface water was concentrated at a single location and caused to flow through the 30-inch culvert and onto S & M land at a different location in a much larger than normal volume at an accelerated rate of speed.

The original plans for subdividing and developing the 25-acre tract provided for surface water drainage by means of an open ditch and pipes. This system complied with the drainage requirements of the zoning board and would have resulted in approval of the entire subdivision.

One witness for the Department testified that the open ditch in the original plan would not have been approved because of a prior Board of Health regulation. This regulation was not placed in evidence, and the extent of its application to this property was seriously questioned. There was also testimony that a number of subdivision plats containing open-ditch drainage for surface water had been approved after the adoption of the Board of Health regulations.

After the construction of the Department's ditches and culvert and the resulting accumulation and acceleration of the flow of the water, compliance with zoning regulations required the installation of an underground drainage system (storm sewer). It is admitted that the installation of this system materially increases the cost of development and that failure to comply can only result in the refusal of the zoning board to approve the development and sale of twelve residential lots.

It was stipulated that evidence of the taking or damage would be confined to twelve specified residential lots that were directly affected by the drainage problem created by the Department's structures.

The landowner's evidence as to damages, based on "before" and "after" values, ranged from $38,420 to $50,000, while the Department's witness fixed the amount at $3,534.

The Department does not claim that the landowner has not been damaged, but rather that the water was discharged into a natural drain and that any damages that may have resulted were noncompensable; it had made no unreasonable change in the natural drainage; and the method used was the only reasonable way to accomplish the job of carrying surface water from one upper owner to the next adjacent lower owner.

■ Although a lower owner is bound to accept natural drainage from an upper owner, the rights of the upper owner are not unlimited. The upper owner may not unreasonably change the natural flow of water or cause it to collect and be cast upon the lower estate at a point where it had not previously flowed or in an increased volume or an accelerated rate of flow so as to cause substantial damage to the lower owner. Klutey v. Commonwealth, Department of Highways, Ky., 428 S.W.2d 766 (1968); Commonwealth, Department of Highways v. Watson, Ky., 446 S.W.2d 294 (1969). This rule in substance

weighs the reasonableness of the use of the land drained against the gravity of the harm to the land receiving the burden of the drainage. Klutey v. Commonwealth, Department of Highways, supra.

■ The question of the reasonableness of use of the land by the upper owner against the harm to the lower owner resulting from such use is a matter for the jury. Commonwealth, Department of Highways v. Baird, Ky., 444 S.W.2d 541 (1969).

Here the court submitted to the jury under appropriate instructions two questions: whether, considering the rules in Klutey and Baird, the Department had made an unreasonable change in the natural drainage to the substantial damage of S & M; and the amount of damages, if any, to be awarded.

Unlike the usual condemnation case where the only question before a jury is the amount of the award, the jury here is required to consider and pass on two questions: first, that of liability, and second, the amount of the award, a determination of liability being a prerequisite to the fixing of the amount of the award.

The jury returned a verdict for S & M and awarded damages in the sum of $14,500.

■ We have examined the record and conclude that there was sufficient evidence of probative value to support the jury's finding that the Department had unreasonably changed the natural drainage to the substantial damage of S & M. There being sufficient evidence to support the verdict of the jury as to liability, we cannot disturb this finding of fact. Commonwealth, Department of Highways v. Stocker, Ky., 423 S.W.2d 510 (1968); Blue Grass Restaurant Company v. Franklin, Ky., 424 S.W.2d 594 (1968).

■ The jury, in determining the amount of the award, fixed the before value of the twelve lots at $83,000 and the

after value at $68,500. The evidence fixed the highest before value at $49,250 and the highest after value at $29,674. The after value, as fixed by the jury, exceeded the highest before value set out in the evidence. Apparently, the jury was thoroughly confused by the evidence submitted, and justifiably so. The jury therefore chose to put its own value on the property, ignoring the evidence. This defect in the verdict requires the reversal of so much of the judgment as fixes the amount of the damages awarded. Commonwealth, Department of Highways v. Wynn, Ky., 396 S. W.2d 798 (1965).

The judgment is affirmed as to liability but reversed as to the amount awarded, and it is remanded to the lower court for further proceedings in conformity with this opinion.

All concur.