Chudzinski et al., Appellants, *v.* City of Sylvania et al.,
Appellees. ▐

[Cite as Chudzinski v. Sylvania (1976),
53 Ohio App. 2d 151.]

(No. L-75-227—Decided May 14, 1976.)

*Messrs. Wilkowski & Bloom,* for appellants.
*Messrs. Spengler, Nathanson, Heyman, McCarthy &
Durfee* and *Mr. B. Gary McBride,* for appellees.

Wiley, J. This is an appeal from a judgment of the
Court of Common Pleas of Lucas County in favor of the
defendants in an action for damages filed against the
city of Sylvania and Southbriar, Inc., the appellees.
  The two assignments of error raise the issue of wheth-

er or not a municipality and a private property owner are liable in damages for a flooding condition caused from an increase and acceleration in the flow of surface waters beyond the capacity of a natural watercourse, resulting from the actions of the municipality and the property owner.

The parties stipulated to the following facts:

"1. That the plaintiff, John Chudzinski, and his wife, Evelyn H. Chudzinski, are the owners in fee simple of the property described in paragraph one of plaintiffs' amended and supplemental complaint.

"2. That transversing the property as set forth in paragraph one of plaintiffs' amended and supplemental complaint is a natural and defined watercourse known as Ravine Ditch.

"3. That periodically, the water in Ravine Ditch along the course at which it transverses the property of the plaintiffs exceeds the natural confines of the watercourse and its capacity, and as a result, floods part of the property of the plaintiffs.

"4. That all waters which drain into the aforementioned Ravine Ditch are natural surface waters and are a direct result of natural drainage, and that defendants, The City of Sylvania, and Southbriar, Inc., have not diverted any water into Ravine Ditch from any other natural water shed.

"5. The increase in the amount of water which is drained into Ravine Ditch is a direct result of development of a shopping center by defendant, Southbriar, Inc., of defendant, The City of Sylvania, requiring a 48-inch tile under Brint Road in Ravine Ditch to drain the housing development known as Sylvan Square and of other development of property in the said water shed; but that such action by defendants aforementioned introduced no other water but that which would normally flow into the aforementioned watercourse; and that any increase in amount and intensity of water in Ravine Ditch is caused by development of property which naturally drains into Ravine Ditch with the accompanying reduction in the amount of surface water absorbed by the natural surface of the re-

spective properties in the watershed which results with development of property.

"6. The tile under Brint Road in Ravine Ditch upstream from plaintiffs, is 48 inches in diameter; the tile under the railroad tracks in Ravine Ditch, downstream from the said 48 inch tile, just west of plaintiff's property, in 24 inches in diameter at its upstream terminus and 30 inches in diameter at its downstream terminus; the tile constructed by defendant, Southbriar, Inc., in Ravine Ditch midway between the aforementioned railroad tracks and Main Street upon said defendants' property is 8 inches in diameter; and the tile in Ravine Ditch under Main Street just north of the plaintiffs' property and downstream of said 8 inch tile is 24 inches in diameter; and that the said tiles under said Railroad and said Main Street have been in place for more than 21 years prior to commencement of this suit.

"7. That the question of liability on the part of defendants, The City of Sylvania and Southbriar, Inc., if any, shall be determined upon the pleadings of the parties, these stipulations of facts, oral arguments of counsel, and briefs of the parties as ordered by the Court."

The record further reveals that, before the development of Sylvan Square, the tile inlet to Ravine Ditch under Brint Road was 24 inches in diameter; the outlet for Ravine Ditch under Main Street was, likewise, 24 inches. The doubling of the diameter of the tile under Brint Road was required by the city of Sylvania because of the connection of storm sewers of approimately 200 residential properties to Ravine Ditch. The doubling of the diameter quadrupled the capacity of the tile. Prior to the Sylvan Development, the ditch drained a small part of 130 acres of unimproved land. The appellant claims that, because of the improvement, there is a 70 percent increase in run-off into the ditch. The result of the increase is to create a backup of waters at Main Street. Because of flooding, plaintiff claims that he cannot use, for any purpose, an 80 by 120 foot section of his land.

The city of Sylvania required *the inlet* into Ravine Ditch at Brint Road to be quadrupled in capacity; where-

as, *the outlet* at Main Street remained unchanged. In the opinion of this court, the city of Sylvania could have granted relief from the flooding claimed by the plaintiff by increasing the size of the tile under Main Street to that of the tile under Brint Road. See Shoemaker, An Engineering-Legal Solution To Urban Drainage Problems, 45 Denver L. J. 381 (1968). For this reason alone, the judgment of the trial court should be reversed and the cause remanded for further proceedings. The facts of this case are distinguishable from the facts in the cases cited in the brief of the city of Sylvania. Compare the facts in *Munn* v. *Horvitz Co.* (1964), 175 Ohio St. 521, and cases cited therein at pages 525-28; *cf. Johnston* v. *Miller* (1968), 15 Ohio App. 2d 233.

The developers of Sylvan Squares, Dunbar Industries, Inc., were dismissed as defendants to the action and no issue was presented to this court as to the propriety of such dismissal.

The application of water rights law to casual surface waters has been the source of considerable confusion among Ohio courts.[1] In *Munn* v. *Horvitz Co.* (1962), 120 Ohio App. 324, *affirmed at* 175 Ohio St. 521, *certiorari denied* 379 U. S. 820, the owners of property abutting Deer Creek and the village of Gates Mills, which maintains a bridge over the creek, brought an action for an injuction against the city of Mayfield Heights, the state director of highways and the contractor, to prevent the construction of a storm sewer to empty drainage water from two large shopping centers and a freeway into Deer Creek, claiming that this would cause floods and erosion and damage appellants' properties.

It was determined by the Court of Appeals that, even with the increased flow of surface water provided by the 72 inch storm sewer running into Deer Creek, nothing less than a "ten-year" storm would exceed the capacity of the watercourse. *Munn* v. *Horvitz Co.*, 120 Ohio App. at 334. The appellate court, in its disposition of the case,

---

[1]Notes, Ohio Surface Water Rights, 38 Cincinnati L. Rev. 525 (1969).

found that it was confronted with, *inter alia,* the questions:

"* * * whether under the circumstances the plaintiffs have an adequate remedy at law, and * * * whether the plaintiffs after having permitted large expenditures of public funds in the installation of most of the sewer, can now seek equitable relief to enjoin the completion of it." *Id.,* at 335.

That court did not address the former question but only the latter, finding that the plaintiffs did not have *"a legal or equitable right to enjoin* the construction of such supplemental sewer." (Emphasis added.) The court went on to find that a community had the right to "the reasonable use of natural water-courses" without being subject to liability.

The issue before the Supreme Court was, then, whether lower riparian owners had a legal or equitable right to enjoin the construction of the storm sewer by the appellees. In affirming the decision of the Court of Appeals, the Supreme Court said:

"An upstream municipality may collect, by means of sewers, the surface water from a watershed area within the corporate limits and channel it into a natural watercourse which originates in or passes through such watershed area within the municipality, thus increasing the volume and accelerating the flow of water in the watercourse, without incurring liability to the downstream municipalities or land-owners. *Mason* v. *Commissioners of Fulton County* (1909), 80 Ohio St., 151, approved and applied.)" (First paragraph of the syllabus, 175 Ohio St. 521.)

The unnecessarily broad language of the Supreme Court in *Munn, supra,* did not clear up the confusion that exists with regard to the application of the capacity-of-the-stream rule. That rule provides that an upper riparian owner can increase and accelerate the watercourse flow only to the extent that its natural banks carry it. Although silent on the capacity rule, the Supreme Court cited the decisions of *Pontifical College* v. *Kleeli* (1907), 5

N. P. (N. S.) 241, and *Oakwood Club* v. *South Euclid* (1960), 83 Ohio Law Abs. 153, for the proposition of law stated in the syllabus quoted above.

In *Pontifical College*, the court said, at page 246:

"Water-courses are the means which nature has provided for draining the land, and, when a water-course exists the lower lands are under a natural servitude to receive all surface water which is drained into them, subject to the qualification that the upper proprietor can not by artificial means, to the damage of the lower proprietor, increase the volume beyond the natural capacity of the stream."

The opposite conclusion was reached in *South Euclid*.

That the capacity-rule was not laid to rest by *Munn* is illustrated by the 1968 case of *Johnston* v. *Miller*, 15 Ohio App. 2d 233. In that decision, the Court of Appeals for Madison County affirmed a jury verdict for the plaintiff where defendant concentrated and accelerated the flow of surface water into a culvert which flowed into a natural waterway on the plaintiff's land. That court approved the following charge by the trial court to the jury:

" 'If the upper owner creates an overflow or makes a greater overflow than formerly he incurs liability for the damage resulting therefrom. * * *' "

From a review of the cases dealing with casual surface water rights, it is the conclusion of this court that Ohio courts have resolved disputes in this area on a case-by-case basis according to what is just and reasonable under the circumstances.[2] *Munn, supra,* is not controlling in the case *sub judice. Cf. Steinbeck* v. *Philip Stenger Sons* (1975), 46 Ohio App. 2d 22, fn. 3.

The trend of decisions in the area of surface water

---

[2]See the discussion of *Persin* v. *Youngstown* (1949), 57 Ohio Law Abs. 560, found in Notes, *supra* note 1, at 532 and Munro, Airports, Subdivisions and Surface Waters, 30 Cincinnati L. Rev. 391, 403 (1961); *cf. Steinbeck* v. *Philip Stenger Sons, supra*; see also *McCoy* v. *Rankin* (1941), 35 Ohio Law Abs. 621.

disputes is toward the adoption of the reasonable use rule[3] which has been stated as follows:

"Under it a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." Kinyon and McClure, *Interferences With Surface Waters*, 24 Minn. L. Rev. 891, 904 (1940).

This rule is more closely akin to tort law than to property law and treats surface water as being similar to such nuisances as vibrations, noise, and smoke.[4]

As stated in *State* v. *Deetz* (1974), 224 N. W. 2d 407, 415, 66 Wis. 2d 1, 16:

"In light of the trend of the law to abandon the common enemy rule because it no longer comports with the realities of our society, the American Law Institute has attempted a codification of that rule in the Restatement, 4 *Torts*. The Restatement rule provides:

'Non-trespassory invasions of a person's interest in the use and enjoyment of land resulting from another's

---

[3]Following the lead of New Hampshire in *Swett* v. *Cutts* (1870), 9 Am. Rep. 276, 50 N. H. 439, and Minnesota in *Bush* v. *City of Rochester* (1934), 191 Minn. 591, 255 N. W. 256, 12 other jurisdictions have adopted some form of the reasonable use rule. *State* v. *Deetz* (1974), 66 Wis. 2d 1, 224 N. W. 2d 407; *Weinberg* v. *Northern Alaska Development Corp.* (Alaska 1963), 384 P. 2d 450; *Rodrigues* v. *State* (1970), 52 Haw. 156, 472 P. 2d 509; *Commonwealth* v. *S. & M. Land Co., Inc.* (Ky., 1972), 503 S. W. 2d 495; *Armstrong* v. *Francis Corp.* (1956), 20 N. J. 320, 120 A. 2d 4; *Jones* v. *Boeing Co.* (N. D., 1967), 153 N. W. 2d 897; *Houston* v. *Renault, Inc.* (Tex., 1968), 431 S. W. 2d 322; *Sanford* v. *University of Utah* (1971), 26 Utah 2d 285, 488 P. 2d 741; *Keys* v. *Romley* (1966), 64 C. 2d 396, 412 P. 2d 529; *Baer* v. *Board* (1969), 255 Md. 163, 257 A. 2d 201; *Wells* v. *State Highway Comm.* (Mo. 1973), 503 S. W. 2d 689, and *Morris* v. *McNicol* (1974), 83 Wash. 2d 491, 519 P. 2d 7.

[4]Notes, *supra* note 1.

interference with the flow of surface water are governed by the rules stated in secs. 822-831.' Sec. 833, p. 269.

"Under sec. 822 of Tentative Draft No. 17, which incorporates by reference the damages occasioned by surface waters, it is provided that one is subject to liability as a result of the nontrespassory invasion when:

'The invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the principles controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.' (P. 22)

"The reasonableness of an intentional act is a question of fact to be determined by weighing the factors set out in Sec. 826, Tentative Draft No. 18, p. 3:

'Sec. 826 Unreasonableness of invasion.

'An intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in sec. 822, if

'(a) the gravity of the harm outweighs the utility of the actor's conduct, or

'(b) the harm caused by the conduct is substantial and the financial burden of compensating for this and other harms does not render infeasible the continuation of the conduct.'

"The factors involved in determining the gravity of harm are set out in sec. 827, Tentative Draft No. 17, page 36:

'Sec. 827 Gravity of harm-factors involved.

'In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

'(a) the extent of the harm involved;

'(b) the character of the harm involved;

'(c) the social value which the law attaches to the type of use or enjoyment invaded;

'(d) the suitability of the particular use or enjoyment invaded to the character of the locality;

'(e) the burden on the person harmed of avoiding the harm.'

"The factors involved in determining the utility of

conduct are set out in sec. 828, Tentative Draft No. 17, page 41:

'Sec. 828 Utility of conduct-factors involved.

"In determining the utility of conduct which causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

'(a) the social value which the law attaches to the primary purpose of the conduct;

'(b) the suitability of the conduct to the character of the locality;

'(c) whether it is impracticable to prevent or avoid the invasion, if the activity is maintained;

'(d) whether it is impracticable to maintain the activity if it is required to bear the cost of compensating for the invasion.' "

Upon remand for trial to the Court of Common Pleas, the total capacity of Ravine Ditch should be determined by expert testimony. See *Munn, supra,* 120 Ohio App. at 333. If it is determined that the capacity is exceeded as a result of the construction of the 48 inch tile under Brint Road, then it should be determined whether, under the circumstances, it was reasonable for the city to require an increase in the size of the tile under Brint Road without increasing the size of the tile under Main Street. In making such a determination, the Restatement of Torts should be applied to the facts. Additionally, in determining reasonableness, there must be taken into account the alternatives available to the defendant, the city of Sylvania. The same analysis should be applied to the 8 inch tile installed by the defendant Southbriar, Inc.

For the reasons stated above, the appellant's assignments of error are well taken and it is the judgment and order of this court that the judgment of the Court of Common Pleas Court of Lucas County be reversed and the cause remanded to that court for further proceedings according to law consistent with this judgment.

*Judgment reversed.*

BROWN, P. J., and POTTER, J., concur.