JOURNAL ENTRY AND OPINION
{¶ 1} Eddie and Christine Gregory ("the Gregorys") appeal from the trial court's verdict in favor of the plaintiff, Valerie Verchio ("Verchio"). The Gregorys argue that the trial court's verdict, the award of punitive damages and the award of attorney fees are against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} In 1994, Verchio moved into the residence located at 7004 Donna Rae Drive, Seven Hills, Ohio. At the time of purchase, the residential property disclosure form for her house showed no problems with water, foundation walls or water in the basement. From the time Verchio moved into her property up until August 2000, she never suffered from water or erosion problems in her backyard. Additionally, Verchio had a friendly, neighborly relationship with the Gregorys, her immediate neighbor to the south.
 {¶ 3} The Gregorys owned and resided in the residence located at 7012 Donna Rae Drive, Seven Hills, Ohio. The Gregorys' property is significantly higher *Page 3 
than Verchio's and at the border of the Gregory property is a slope that is located on the Verchio property.
 {¶ 4} Unlike Verchio, for several years, the Gregorys suffered from water problems in their back yard that affected the foundation of their home. In fact, because of the amount of water pooling around the foundation walls of their home, the Gregorys had to replace the north, south, and western foundation walls in 1997. Despite the replacement, water continued to pool around the foundation walls of the Gregory home.
 {¶ 5} In 2000, the Gregorys began a home construction project that is the center of this lawsuit. The Gregorys removed the wooden patio deck located at the rear of their home and replaced it with a brick patio, added a Florida room at the back of the house, and rebuilt and extended a previously existing retaining wall. During the construction, the Gregorys excavated a large amount of heavy, wet clay soil and deposited the soil in a large mound at the back of their property near the slope of Verchio's property.
 {¶ 6} In August 2000, Verchio discovered that this large mound of wet clay soil had been pushed over and down the slope of her property. Verchio saw that this clay covered several feet of the trunks of trees located on her property, causing a girdling of the trees. Verchio spoke with the Gregorys' contractor and another worker and learned that Mr. Gregory had instructed the workers to push the dirt *Page 4 
down the slope of Verchio's property to level out the grade. Verchio also spoke with Mr. Gregory, who said that he had been having water problems and that he was going to do whatever he needed to do to alleviate those problems and level out his yard. Mr. Gregory informed Verchio that he would remove the clay from her property.
 {¶ 7} In the fall of 2000, Verchio hired Robert Laverne ("Laverne"), a tree consultant from Davey Tree, to evaluate any potential damage to her trees on the side of the slope where the clay had been dumped. Laverne recommended that the soil be removed carefully by hand to prevent harm to the trees. Laverne also spoke with Mr. Gregory and explained the necessity of removing the clay soil as soon as possible.
 {¶ 8} After several months without any action on the part of the Gregorys to remove the clay, Verchio contacted the police, who cited the Gregorys for dumping, girdling, and changing the grade without a permit. In November 2000, after the Gregorys continued to work on their project and still had not removed the clay, Verchio obtained a stop work order. Only then did the Gregorys begin removing the clay.
 {¶ 9} Although Gregory claimed his contractor pushed the dirt onto Verchio's property without his consent or knowledge, Gregory hired his contractor, at the price of $900.00, to assist in the removal of the clay. The Gregorys did not attempt to recoup *Page 5 
this money either by suing their contractor, filing a counterclaim against their contractor, or by bringing their contractor in as a witness to bolster their defense.
 {¶ 10} After the Seven Hills police issued the citations against the Gregorys, the city discovered that the outdoor patio drain was clogged with construction debris, preventing it from functioning properly. In addition, the city suggested that a swale, or drainage ditch, be constructed in the north sideyard of the Gregory property to divert excess surface runoff away from the Verchio property. Finally, the city asked the Gregorys' architect to produce a plan showing the restoration of the grade on the Gregory property to pre-construction elevations.
 {¶ 11} The Gregorys fixed the drain and, through their lawyer, sent a letter to the city stating that they would construct the swale as soon as their contractor was available. The Gregorys never installed the swale and, instead, constructed a small berm, which did not run the length of their side yard and, therefore, did not prevent excess runoff towards the Verchio property. The Gregorys did not submit a plan showing restoration of the grade on their property and denied that they ever changed the grade of their yard.
 {¶ 12} In the fall of 2002, Verchio began having water problems in her backyard and in the basement of her home. Verchio claimed that water from the Gregorys' backyard washed down the slope into her yard, where it pooled. Verchio explained that the pooling became so bad that her grass rotted out and all her plants *Page 6 
were washed away. Verchio twice attempted to replace the grass but was unsuccessful. Additionally, Verchio observed mold in her basement. In an effort to maintain her home and yard, Verchio purchased and buried drain tile around her house.
 {¶ 13} In July 2003, Verchio filed a civil complaint in the Cuyahoga County Court of Common Pleas. Both parties waived their demand for a jury trial, and the trial court commenced the bench trial on February 7, 2006.
 {¶ 14} During trial, professional engineer Stephen Hovancsek ("Hovancsek") testified that he inspected Verchio's property and discovered that in 2006, the clay soil remained on her property. Additionally, Hovancsek testified that the Gregorys trespassed on Verchio's property, raised the grade of their yard, and are still encroaching on Verchio's property. Hovancsek also testified that water from the Gregory property sheet flows from the Gregory property onto Verchio's property and that no sideyard swale exists.
 {¶ 15} Laverne, a master forester and arborist, testified that between his first visit in 2000 and his second visit in 2004, most of the clay soil had been removed, but so had ten of the nineteen trees affected by the clay soil. Laverne stated that the two largest remaining trees are in a state of decay that is not remediable.
 {¶ 16} To support their defense, the Gregorys hired Larry Roberts ("Roberts"), a civil engineer. Roberts testified that the Gregorys' construction work produced a *Page 7 
mere four percent increase in the amount of runoff and that any changes made by the Gregorys would not alter the flow of the water. Roberts did not explain the dramatic increase in the water on the Verchio property after the Gregorys' 2000 construction.
 {¶ 17} On February 14, 2006, the trial court returned a judgment in favor of Verchio and awarded her $8,601.66 in compensatory damages, $1,000.00 in punitive damages, and $17,365.56 in attorney fees. The Gregorys appeal, raising four assignments of error.
 {¶ 18} In their first assignment of error, the Gregorys argue as follows:
 "Appellants did not use their property unreasonably by excavating at the rear of their home to accommodate a room addition and patio for their home, and to find otherwise is against the manifest weight of the evidence and contrary to law."
 {¶ 19} When the manifest weight of the evidence is challenged, "an appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle, Lorain App. Nos. 97CA006897 and 97CA006907.
 "'The reviewing court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'
 * * *
 Moreover, `every reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court.]' Furthermore, `if the evidence is susceptible of more than one construction, we must *Page 8 
 give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.'" (Internal citations omitted)
Pavkov Sr. v. Time Warner Cable, Wayne App. No. 99CA0025.
 {¶ 20} In McGlashan v. Spade Rockledge Terrace Condo Dev. Corp. (1980), 62 Ohio St.2d 55, our Ohio Supreme Court adopted the reasonable use rule to disputes involving surface water controversies. The Court determined as follows:
 "[A] possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable. In determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement on Torts 2d 108-142, Sections 822-831."
 {¶ 21} This court has reviewed the above cited rules stated in 4 Restatement on Torts 2d and concludes that the trial court correctly determined the Gregorys acted unreasonably. The facts established at trial demonstrated that when the Gregorys constructed the addition, they raised the grade and altered the water flow, which increased the amount of drainage from their property to Verchio's property. Additionally, the Gregorys made these changes without first providing for some method of drainage.
 {¶ 22} In response, the Gregorys claim their patio drain and the berm constructed between their property and the Verchio's property acted as a diversion *Page 9 
to any increase in the water flow. However, the City of Seven Hills questioned the drain's capacity and suggested that the Gregorys install a sideyard swale. The Gregorys never installed this sideyard swale; they, instead, constructed a small berm, which did not run the length of their sideyard and therefore, did not prevent excess runoff towards the Verchio property.
 {¶ 23} Finally, Hovancsek testified that the Gregorys' expert report submitted by Roberts did not accurately depict the water conditions on the Verchio property. Hovancsek testified that while Roberts did account for the greater rate of run-off because of the addition, Roberts did not account for the change in grade, nor did he account for the lack of a sideyard swale.
 {¶ 24} Based on the above, we agree with the trial court's conclusion that the Gregorys' excavation and construction at the rear of their home constituted an unreasonable use of their property. See,McGlashan, supra; Chudzinski v. City of Sylvania (1976),53 Ohio App.2d 151. Moreover, we cannot say that the trial court's conclusion was against the manifest weight of the evidence. The Gregorys' first assignment of error is overruled.
 {¶ 25} In their second assignment of error, the Gregorys argue as follows:
 "Appellants were not liable for any acts of trespass committed by an independent contractor on the property of appellee and finding otherwise is contrary to law." *Page 10 
 {¶ 26} "A trespasser is one who, without express or implied authorization, invitation or inducement enters private premises purely for his own purposes or convenience." McKinney v. Hartz RestleRealtors, Inc. (1987), 31 Ohio St.3d 244.
 {¶ 27} In the present case, the Gregorys mistakenly argue that because their independent contractor pushed the clay over onto Verchio's property, they are not liable for trespass. The Gregorys cite toHughes v. Railway Company (1883), 39 Ohio St. 461, in support of this position. However, the Ohio Supreme Court in Hughes held that where the employer retains control and direction over the mode and manner of doing work, and an injury results from the negligence or misconduct of the contractor, the employer is liable. Id.
 {¶ 28} The evidence established at trial demonstrated that Verchio spoke with the Gregorys' contractor and another worker and learned that Mr. Gregory had instructed the workers to push the dirt down the slope of Verchio's property to level out the grade. Verchio also spoke with Mr. Gregory, who said that he had been having water problems and that he was going to do whatever he needed to do to alleviate those problems and level out his yard. Although Mr. Gregory told Verchio that he would remove the clay from her property, he continued to work on his construction project for three months without removing any clay from her property. Mr. Gregory only began to remove the clay when he received a stop work order from the City of Seven Hills. *Page 11 
 {¶ 29} Based on the above, we cannot say that the trial court's conclusion was against the manifest weight of the evidence. The trial court heard the witnesses, had the opportunity to adjudge their credibility, and could have concluded that the Gregorys maintained the requisite control over their independent contractor such that they may be held liable for the trespass.
 {¶ 30} The Gregorys' second assignment of error is overruled.
 {¶ 31} In their third assignment of error, the Gregorys argue as follows:
 "The award of punitive damages is against the manifest weight of the evidence and contrary to law."
 {¶ 32} An award of punitive damages requires something more than a showing of mere negligence; rather, the law requires an adequate showing of actual malice. Burns v. Prudential Securities Inc.,167 Ohio App.3d 809, 2006-Ohio-3550; Preston v. Murty (1987), 32 Ohio St.3d 334. InPreston, the Ohio Supreme Court defined "actual malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Id. The Ohio Supreme Court has recognized that "it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances." Burns, supra; Davis v.Tunison (1959), 168 Ohio St. 471. Accordingly, actual malice can be inferred from conduct and surrounding *Page 12 
circumstances which may be characterized as reckless, wanton, willful, or gross. Burns, supra; Columbus Fin., Inc. v. Howard (1975),42 Ohio St.2d 178.
 {¶ 33} We find no merit in the Gregorys' argument that they did not act with actual malice. The evidence in the record established that Mr. Gregory told Verchio that he would do whatever he needed to do to level out his property; Verchio was told that Mr. Gregory instructed his independent contractor to push the clay onto her property; the Gregorys only began removing the clay after the City of Seven Hills issued a stop work order on their construction project; and, in 2006, clay still remained on Verchio's property.
 {¶ 34} Additionally, after the City of Seven Hills suggested that the Gregorys install a sideyard swale, the Gregorys promised to install the swale as soon as their contractor was available. The evidence established at trial demonstrated that the Gregorys never installed the swale.
 {¶ 35} Based on the above, we find that Verchio proved, by clear and convincing evidence, that the Gregorys acted with actual malice when they used their property unreasonably and when they trespassed on her land. Accordingly, the trial court's award of punitive damages was not against the manifest weight of the evidence. The Gregorys' third assignment of error is overruled.
 {¶ 36} In their fourth and final assignment of error, the Gregorys argue as follows: *Page 13 
 "The award of attorney fees is against the manifest weight of the evidence and contrary to law."
 {¶ 37} In this assignment of error, the Gregorys argue that because the trial court erred when it awarded punitive damages, its award of attorney fees must be reversed as well. Specifically, the Gregorys argue that Verchio should not have been awarded attorney fees because there was an absence of wanton, willful or malicious conduct. Reed v.Fronfield (Jan. 14, 1985), Van Wert App. No. 15-83-25. In our analysis of the Gregorys' third assignment of error, we specifically found that the trial court correctly determined, by clear and convincing evidence, that the Gregorys acted willfully and maliciously when they used their property unreasonably and when they trespassed on Verchio's land. Accordingly, our analysis of the Gregorys' third assignment of error renders this portion of their argument moot.
 {¶ 38} The Gregorys next argue that Verchio did not meet the required quantum of proof to establish her attorney fees. We disregard this argument because the Gregorys failed to identify in the record the error on which this assignment is based as required by App.R. 12(A)(2). They offered nothing more than a brief statement of the law relating to an award of attorney fees, but failed to state in any manner exactly what evidence they relied on that makes the law applicable to this case.
 {¶ 39} The Gregorys' argument is also insufficient under App. R. 16(A)(7), which requires the appellant to set forth "[a]n argument containing the contentions of *Page 14 
the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." It is not the reviewing court's duty to construct a foundation for an appellant's claims. See, Kremer v. Cox (1996),114 Ohio App.3d 41.
 {¶ 40} Accordingly, the Gregorys' fourth and final assignment of error is overruled.
 {¶ 41} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, JUDGE
 FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 15 
 Appendix Assignments of Error:
 "I. Appellants did not use their property unreasonably by excavatingat the rear of their home to accommodate a room addition and patio fortheir home, and to find otherwise is against the manifest weight of theevidence and contrary to law.
 II. Appellants were not liable for any acts of trespass committed byan independent contractor on the property of appellee and findingotherwise is contrary to law.
 III. The award of punitive damages is against the manifest weight ofthe evidence and contrary to law.
 IV. The award of attorney fees is against the manifest weight of theevidence and contrary to law." *Page 1