[Cite as *Douglas v. Broughton*, 2014-Ohio-808.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

JOHN P. DOUGLAS,                                  :
                                                 :
    Plaintiff-Appellant/Cross-Appellee.         :
                                                 :         Case No. 13CA7
    v.                                           :
                                                 :         DECISION AND
JOHN R. BROUGHTON, ET AL.                        :         JUDGMENT ENTRY
                                                 :
    Defendants-Appellees/Cross-Appellants.      :         Released: 02/27/2014

APPEARANCES:

Craig A. Allen, Ironton, Ohio, for Appellant/Cross-Appellee.

Steven G. Carlino, WESTON HURD, LLP, Columbus, Ohio, for Appellee/Cross-Appellant.

Hoover, J.:

{¶ 1}  This is an appeal of a judgment from the Lawrence County Court of Common Pleas finding, appellee/cross-appellant herein, John R. Broughton ("Broughton") liable to appellant/cross-appellee herein, John P. Douglas ("Douglas") in the amount of $3,500 for a surface water trespass.  Douglas argues here on appeal that the trial court erred in awarding him only $3,500.  Douglas argues that he is entitled to damages in the amount of $31,800.  Broughton presents a cross appeal arguing that the trial court erred in finding him liable for the surface water trespass and awarding damages in the amount of $3,500.  Broughton argues that both the finding of a surface water trespass and the award of damages were against the manifest weight of the evidence.

{¶ 2}  For the following reasons, we remand this case to the Lawrence County Court of Common Pleas for further proceedings consistent with this opinion.

{¶ 3}  In this appeal both parties each present one assignment of error.

Douglas's Assignment of Error:

THE TRIAL COURT ERRED IN NOT AWARDING $31,800.00 IN DAMAGES

Broughton's Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING

BROUGHTON LIABLE FOR WATER TRESPASS AND FOR GRANTING A

DAMAGE AWARD OF $3500 FOR TEMPORARY LOSS OF USE OF

PROPERTY, AS BOTH WERE AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE

## I. Procedural History and Facts.

{¶ 4}  In 2009, Broughton hired Sark Logging to cut timber off his property.  As part of the work, the logging company constructed a timber access road.  Broughton's property is adjacent, at a higher elevation, to property owned by Douglas.  On September 9, 2009, Douglas filed a complaint against Broughton alleging trespass and property damage.  The complaint stated that Broughton changed the natural flow of surface water when he timbered his property and caused damage to Douglas's property in excess of $25,000.

{¶ 5}  On February 9, 2012, a hearing was held in front of a magistrate. Douglas and his expert, James R. Criniti Jr. ("Criniti") testified at the hearing.  Criniti is a staff engineer for Triad Engineering.  At Douglas's request, Criniti visited the property to assess whether excess drainage was created as a result of the logging operation.  In his assessment report, Criniti noted numerous observations to support his opinion that excess drainage was related to the construction of the access road.  The report cited barren soils of the access road, inadequately built diversion ditches, erosion and sediment conveyance swale issues, and stream break damages as contributing factors

to the additional surface water flow onto Douglas's property. The report also included a list of suggested remedial measures.

{¶ 6} At the hearing before the magistrate, Criniti essentially confirmed the findings of his report. He testified that the soils of the development were barren without mulch or seed. In addition, he testified that the property needed to be seeded and mulched to prevent erosion and sediment from leaving the property. He testified that the conveyance ditches, added by the developer, "had filled up with sediment due to no erosion sediment control such as check dam soil fences." Criniti also testified that a low water crossing, added by the developer, was not deep enough to handle storm flows, which resulted in diversion to a valley upland from Douglas's property. He also testified that, in his opinion, the access road was graded to positively drain towards the Douglas property. Criniti estimated that remedial measures would cost $31,800.

{¶ 7} On cross-examination, Criniti testified that before the construction of the timber road, the natural flow of water was towards Douglas's property, but in a lesser amount. He also testified that he did not run calculations on the amount of surface water flowing from Broughton's property to Douglas's property before and after the construction of the timber road. Mr. Criniti admitted that he could have prepared such calculations, but Douglas did not request it.

{¶ 8} Douglas also testified at the hearing. Douglas stated that after Broughton's timbering, he would experience flooding on his property "every time it rain[ed] real hard." Also, Douglas testified that the area had not dried out since construction of the logging road. Although natural drainage from Broughton's property existed before the road, Douglas claimed that excessing flooding occurred as a result of the timber activity. Douglas also claimed damages to

a storage shed containing two vehicles.  Finally, Douglas claimed his loss of use of his property amounted to $75 per day for 870 days, for a total of $65,250.

{¶ 9}  On August 2, 2012, the magistrate issued a decision.  The magistrate first found that the complaint contained three separate causes of action:

(1) A timber trespass where plaintiff alleges the defendant had caused timber to be wrongfully removed from the plaintiff's property;

(2) A surface water trespass where the plaintiff alleges the defendant had, via the construction of a timber road, caused an increase in surface water upon the plaintiff's property; and

(3) Injunctive relief.

The magistrate made the following findings of fact:

\*\*\*

7.      The plaintiff testified as to certain damages (i.e. loss of use, damage to vehicles), however he failed to provide any estimates as to the damage of the automobiles.  In reference to the loss of use, plaintiff did indicate that the mail was undeliverable for a period of time, but no other description of what activities were hindered other than mowing his lawn.  He estimated his loss of use at $75.00 per day for a period of 870 days.  Such calculation was based on the cost of a hotel room however, plaintiff admitted that he was never required to reside in a hotel during the period of time for which he is claiming damages;

8.      \*\*\* In essence, the witness [Criniti] testified he is unsure of how much additional water was entering plaintiff's property as a result of the timbering.  Mr.

Criniti stated that he had not submitted his findings to a contractor to determine a proper estimate.

The magistrate stated: "***[I]t is clear that both the timbering and construction of the timber road was within the boundaries of the defendant's property. This is confirmed by the Eastham survey and the opinion of Earnest Prichard of Prichard Land Surveying. Therefore, the complaint sounding in timber trespass is hereby dismissed." The magistrate also concluded that "It is clear that the timbering had caused some additional run off on to plaintiff's property, however, the extent of such was not demonstrated to a point that would permit the issuance of a permanent injunction."

{¶ 10} The magistrate found that Broughton had committed a surface water trespass. The magistrate awarded Douglas $3,500 in damages for the surface water trespass. Both parties subsequently filed objections to the magistrate's decision.

{¶ 11} On March 8, 2013, the trial court affirmed the decision of the magistrate. The trial court stated: "the Magistrate's award of $3,500.00 for the temporary loss of use of real estate due to no erosion settlement control was reasonable and will make the same award of damages, evidenced by the testimony of the Plaintiff and his expert, Mr. Criniti." [Judgment Entry of March 8, 2013 at pg 3.] The court further found that "The Court finds no additional damages were sustained by proof as to the $31,800.00 claim for remediation of the water trespass, and for receding, [sic] mulching, and clearing ditches, since the proof would require both before and after testimony as to the condition of the real estate and the condition of runoff water during those periods." [*Id.*]

{¶ 12} Appellant Douglas timely filed this appeal on April 4, 2013. Appellee Broughton filed his notice of a cross appeal on April 11, 2013.

## II. Assignments of Error

{¶ 13}  In Douglas's sole assignment of error, he states that the trial court erred in awarding him only $3,500 in damages.  Douglas argues that Broughton's use of land was unreasonable and the damages were foreseeable.  Douglas further contends that the testimony of Criniti was not objected to and contradictory testimony was not presented.  Therefore, it is Douglas's position that the judgment of the trial court should be reversed; and he should be awarded damages in the amount of $31,800.

{¶ 14}  In Broughton's sole assignment of error, he argues that the trial court erred as a matter of law in finding him liable for a surface water trespass.  He contends that the trespass and the damages awarded were both against the manifest weight of the evidence.  Broughton argues that Douglas failed to present sufficient evidence to prove the existence of a water trespass.

{¶ 15}  It is clear that both parties challenge the amount of damages awarded by the trial court.  Douglas argues that he proved damages in the amount of $31,000, while Broughton argues that there should have been no award of damages because the trial court erred as a matter of law when it found a surface water trespass.  We will first address Broughton's argument that the trial court erred as a matter of law when it found a surface water trespass.

### A.  Standard of Review

{¶ 16} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17, the Ohio Supreme Court acknowledged that the civil manifest weight standard is the same as the criminal standard, stating:

> There are several reasons why the standard set forth in *Thompkins* also applies in
>
> civil cases.  First, neither the constitution nor statutes nor rules of procedure treat
>
> civil cases differently from criminal cases with regard to appellate review on the

issues of sufficiency and manifest weight.  *See* Ohio Constitution, Article IV,

Section 3(B)(3); App.R. 12(C); and R.C. 2321.01, 2321.18, and 2945.831.

{¶ 17} This court recently addressed the manifest weight standard of review in civil

cases.  *See In re R.M.*, 4th Dist. Athens Nos. 12CA43 & 12CA44, 2013-Ohio-3588, 997 N.E.2d

169, ¶ 60-62:

> Despite *Eastley*'s attempt to clarify the manifest weight standard of review, we
>
> believe that cause for confusion persists. *Eastley* appears to endorse the "some
>
> competent, credible evidence" standard, yet it also states that it is the same
>
> standard that applies in criminal cases. In criminal cases, however, the Ohio
>
> Supreme Court, this court, and others have framed the issue as whether the record
>
> contains "substantial competent, credible evidence." *E.g., State v. Stallings,* 89
>
> Ohio St.3d 280, 289, 731 N.E.2d 159 (2000); *State v. Getsy,* 84 Ohio St.3d 180,
>
> 193–194, 702 N.E.2d 866 (1998); *State v. Davis,* 4th Dist. No. 12CA3336, 2013-
>
> Ohio-1504, 2013 WL 1579801, ¶ 15; *State v. Miles,* 8th Dist. No. 81480, 2003-
>
> Ohio-2651, 2003 WL 21196552, ¶ 33. Furthermore, in *In re Mullen,* 129 Ohio
>
> St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 15, the court cited two cases with
>
> approval, one after the other: *Masitto v. Masitto,* 22 Ohio St.3d 63, 488 N.E.2d
>
> 857 (1986); and *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 550 N.E.2d 178 (1990),
>
> syllabus. In *Masitto,* the court used the *C.E. Morris* " *some* [competent], credible
>
> evidence" standard to review the trial court's factual finding. *Id.* at 66, 488 N.E.2d
>
> 857 (emphasis added). In *Bechtol,* the court stated: "Where an award of custody is
>
> supported by a *substantial* amount of credible and competent evidence, such an
>
> award will not be reversed as being against the weight of the evidence by a

reviewing court." *Id.* at syllabus (emphasis added). Although we may be in error, we nevertheless believe that a difference exists between "some" evidence and "substantial" evidence. The Ohio Supreme Court, however, seems to use the terms interchangeably.

{¶ 18} We concluded that our essential focus under manifest weight review should be "whether the greater amount of competent, credible evidence presented at trial produced in the trier of fact's mind a firm belief or conviction that [the judgment] was warranted" *Id.* Furthermore, since the Supreme Court of Ohio states that no distinction exists between a criminal or civil manifest weight standard, we should set forth a standard we have articulated in recent decisions.

{¶ 19} "When an appellate court considers a claim that a [judgment] is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *State v. Warren*, 4th Dist. Ross No. 12CA3324, 2013-Ohio-3542, ¶ 16; *See also, State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the [fact finder], when resolving the conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*See also In re R.M.*, 4th Dist. Athens Nos. 12CA43 & 12CA44, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 54.

### B. Analysis

### Surface Water Trespass

{¶ 20} The trial court found that "the testimony of the Plaintiff [Douglas] and Plaintiff's witness, James R. Criniti Jr., meets the burden of proof that the Defendant [Broughton] committed a surface water trespass***due to the timbering of Defendant's property and the installation of the timber road***."

{¶ 21} In Ohio, when resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. *McGlashan v. Spade Rockledge Terrace Condo Development Corp.*, 62 Ohio St.2d 55, 402 N.E.2d 1196 (1980), syllabus.

{¶ 22} "Under a rule of reasonableness, determined on a case-by-case basis, the essence of liability is measured by principles of common-law negligence. The pivotal issue is whether a condition on the premises represents a foreseeable and unreasonable risk of harm." *Ogle v. Kelly,* 90 Ohio App.3d 392, 396, 629 N.E.2d 495, (1st Dist.1993) citing *McGlashan* at 61. "[T]o determine the reasonableness of an invasion, courts must balance the gravity of the harm caused by the interference against the utility [of the] interferer's conduct."

{¶ 23} " 'An intentional invasion of another's interest in the use and enjoyment of land is unreasonable * * * if a) the gravity of the harm outweighs the utility of the actor's conduct, or b) the harm caused by the conduct is substantial and the financial burden of compensating for this and other harms does not render infeasible the continuation of the conduct.' " *Aeh v. Madison Township Trustees, et al.*, 4th Dist. Scioto No. 03CA2885, 2004-Ohio-2181, ¶ 19-21 quoting *Chudzinski v. Sylvania*, 53 Ohio App.2d 151, 158, 372 N.E.2d 611 (6th Dist.1976).

{¶ 24} To determine the gravity of the harm, the courts should consider the following factors:

(a) the extent of the harm involved;

(b) the character of the harm involved;

(c) the social value which the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality;

(e) the burden on the person harmed of avoiding the harm.

*Id.* at ¶ 23-27.

Finally, to determine the utility of the conduct involved, courts are to examine the following factors:

(a) the social value which the law attaches to the primary purpose of the conduct;

(b) the suitability of the conduct to the character of the locality;

(c) whether it is impracticable to prevent or avoid the invasion, if the activity is maintained;

(d) whether it is impracticable to maintain the activity if it is required to bear the

cost of compensating for the invasion."

*Id.* at ¶ 28- 32.

{¶ 25}  Here, we apply the manifest weight standard of review.

{¶ 26}  The testimony of Douglas and Criniti demonstrates that Broughton's timber activities caused an increase of surface water runoff onto Douglas's property.  What is not demonstrated, as pointed out by the trial court is the amount of the increase since Criniti did not perform those calculations.  The ultimate question then is whether the increase in surface water runoff was a result of an unreasonable use of Broughton's land.  Broughton's use of his property is determined to be unreasonable if the gravity of the harm outweighs the utility of the actor's conduct, or the harm caused by the conduct is substantial and the financial burden of compensating for this and other harms does not render infeasible the continuation of the conduct. *Supra Aeh* at ¶ 19-21.

{¶ 27}  Criniti testified that the increased surface water runoff was a result of inadequacy of the timbering construction area.  Criniti indicated in his report and testimony that the construction area contained barren soils, inadequately installed water crossings, conveyance ditches suffering from no erosion settlement controls, and the access road was graded to drain towards the Douglas property.  The trial court found Broughton and the logging company jointly and severally liable as a result of the "no erosion settlement controls."

{¶ 28}  Evaluating the manifest weight of this evidence, we decline to overturn the judgment of the trial court.  Our standard of review affords deference to the trial court's decision.  Although we recognize the absence of calculations of the surface water flows is harmful to Douglas's case, adequate evidence remains to lead the trial court to determine that the increased

flows onto Douglas's property were unreasonable.  Therefore, we affirm the judgment of the trial court finding Broughton liable for a surface water trespass.

Damages

{¶ 29}  We will now look to the damages issue.  The trial court noted that Douglas's expert, Criniti, did not provide calculations of surface water flow from Broughton's property to Douglas's property either before or after the construction of the timber road.  However, the trial court based its award, as noted in its March 8, 2013 Judgment Entry, on Criniti's testimony: "At the time of my visit, the ditches, the conveyance ditches that were added by the developer or contractor had, at that point, partially filled up with sediment due to no erosion settlement control, such as check dam soil fences."  The trial court also cited this potion of Criniti's testimony found on page 23 of the February 9, 2013 hearing transcript:

> The access road (timber road) in my opinion, without survey in my opinion, was graded to positively drain towards the Douglas property.  Therefore, the water flows to Mr. Douglas's property.  Any water reached passed [sic] that point was at another ditch, in my opinion, partially filled with sediment due to no erosion settlement controls.
>
> [Judgment Entry of March 8, 2013 pg. 4].

{¶ 30}  The trial court affirmed the magistrate's decision to award Douglas $3,500 in damages, finding a surface water trespass occurred on the property of Douglas as a result of Broughton's timbering activity.  The court awarded those damages "for temporary loss of use of the real estate due to no erosion settlement control reasonable and will make the same award of damages." [*Id.*].  However, the trial court found that "Plaintiff's [Douglas's] claims as to damages to automobiles, a trailer, interruption in U.S. mail services and *loss of use* of the

property for eight hundred and seventy days at a rate of $75.00 per day, were not sustained by the evidence." (Emphasis added.) The trial court also concluded: "no additional damages were sustained by proof as to the $31,800.00 claim for remediation of the water trespass, and for receding, [sic] mulching, and clearing ditches since the proof would require both before and after testimony as to the condition of the real estate and the condition of runoff water during those periods."

{¶ 31} We find significant confusion exists in this case as to how the award of damages was calculated. The amount of $3,500 was "for temporary loss of use," yet the trial court found that the evidence did not sustain Douglas's requested damages, which included "loss of use of the property." In evaluating the evidence, we are unable to decipher the basis for the damage award of $3,500.

{¶ 32} First, Douglas's complaint alleges, "he has been damaged by said trespass and the dumping of water, soil and debris upon his land in an amount in excess of $25,000." On February 7, 2012, two days prior to the hearing before the magistrate, Douglas's attorney sent Broughton's attorney a facsimile containing supplement discovery. The facsimile set out additional damages including $2,247.02 for a damaged fence, $8,000 for two damaged trailers, $4,000 for a metal building, $1,600 for a concrete pad, $900 for the cost of workers, and a loss of use in the amount of $75 per day. Broughton filed a motion in limine to exclude testimony regarding these damages because they were received two days before the hearing. Although the magistrate denied the motion, the magistrate sustained an objection by Broughton's counsel regarding testimony about the damaged fence. The magistrate allowed Douglas to testify about the other damages including the loss of use damages, which Douglas claimed to be $75 per day for eight hundred seventy days.

{¶ 33} Next, in the record, Plaintiff's Exhibit 10 is Criniti's four-page report detailing his findings relating to Broughton's timbering activities and the effects on Douglas's property. A copy of the report is also located in the record, unmarked, that contains a fifth page. The fifth page contains a breakdown of the $31,800 estimate for remediation on appellant's property. Within the estimate, the tasks "Seeding and Mulching" and "Construction Layout" are listed in the amounts of $3,000 and $500, respectively.

{¶ 34} It is a plausible hypothesis by this Court that this could be the basis for the $3,500 in damages. However, several problems exist with this notion. The copied report is not marked as a specific exhibit; and the trial court stated in its decision that "The Court finds no additional damages were sustained by the proof as to the $31,800.00 claim for remediation of the water trespass, and for receding, [sic] mulching, and clearing ditches." [Judgment Entry of March 8, 2013 at pg. 4.]

{¶ 35} When considering all evidence pertaining to damages, we are unable to ascertain the basis for the award of damages in the amount of $3,500. Accordingly, we must vacate the trial court's judgment of March 8, 2013 and remand this cause back to the trial court with the limited purpose of explaining its award of damages.

{¶ 36} Based on the foregoing, this matter is remanded to the Lawrence County Court of Common Pleas for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART, AND CAUSE REMANDED.

JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.  Appellant/Cross-Appellee and Appellee/Cross-Appellant shall equally divide the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment & Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

By:_____
            Marie Hoover, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.